Stoughton *against* Rappalo.

New Trial.

*Philadelphia.*
—
*Saturday,*
January 3.

THIS was a *replevin* for 631 barrels of flour, tried before the Chief Justice, at *Nisi Prius*, in *November*, 1817, when the jury found a verdict for the plaintiff, subject to the opinion of the Court in bank, on a point reserved.

The plaintiff, on the 9th *March*, 1813, contracted to ship 631 barrels of flour on board the *Minerva*, a Spanish vessel, of which the defendant was master, from *Philadelphia* to *Havanna*, at 4 dollars a barrel. The flour was accordingly put on board by the 16th *March*, the ship then lying at the wharf in *Philadelphia*. On the 16th *March*, the bills of lading were signed, and the ship cleared out at the custom house; and on the 17th she cleared out at the Spanish consul's. When the contract was made, both parties expected a blockade of the *Delaware* by the British, and, accordingly, notice was received in *Philadelphia* on the 16th *March*, that the blockade was instituted. Under these circumstances, the plaintiff several times applied to the defendant either to proceed on his voyage or to deliver up the flour; and the defendant, on the last application, refused to do either, unless the plaintiff, in case of the flour being delivered to him, would pay one half freight, (two dollars a barrel,) or, in case the vessel proceeded, would guarantee the ship, and two-thirds of the

*Query,* Whether a contract for carrying goods on freight to a foreign port is dissolved by a blockade of the port in which the ship is loaded? But in such case the master of the vessel has no right to detain the goods from the shipper till indemnification be given or compensation made. If entitled to these he must resort to his action on the case.

freight. The plaintiff, therefore, on the 29th *April,* issued this *replevin,* on which the flour was delivered to him.

The defendant pleaded property, on which issue was joined, and a verdict taken for six cents damages, and six cents costs, subject to the opinion of the Court, whether the property, at the commencement of the action, was in the plaintiff.

*Chauncey* and *Ingersoll,* for the defendant. The question arising upon the evidence in this case, is, whether the contract for carrying the flour on freight, was dissolved by a blockade of the port, in which the ship was loaded. We contend that there was no dissolution of the contract: but that its execution was merely suspended during the existence of the blockade; and that the defendant had a right to detain the property during that period, for the purpose of carrying it to *Havanna,* when the blockade was over. This question has never been decided. The cases that have occurred, are of a blockade of the port of destination: none of a blockade of the port of lading. The latter cannot be distinguished from an embargo; in which case it is clearly held that, being only a temporary restraint, it does not dissolve the contract. *Hadley* v. *Clark,* (8 *T. R.* 259.) A blockade is not, in its nature, more permanent than an embargo. If perishable commodities may be deemed an exception to the general rule, the ship owner ought also to be considered, who incurs expense in fitting out the ship, and preparing for the voyage. By the French law, an embargo and blockade are placed on the same footing. 1 *Valin,* 627: who says, that, if the goods are perishable, and are taken out by the owner, he ought to replace them, if they can be replaced, in specie. The owner of the goods, therefore, had no right to replevy them without indemnifying the master.

*J. R. Ingersoll,* contra, contended that the master ought either to have proceeded on the voyage, or delivered up the cargo; but that, at any rate, there was no lien on the cargo, as no freight was earned. The maritime law knows no lien but for salvage or freight: and no freight is due where there is no carriage. There is no lien for demurrage. *Paul* v. *Birch,* (2 *Atk.* 621.) If the owner takes away his goods before the ship's sailing, the master may have an action for damages.

1818.

STOUGHTON
*v.*
RAFFALO,

*Abbott*, 3. 11. 358. 1 *Bos. & Pull.* 634. This ship cannot be in a better situation than if she had commenced her voyage and been turned back by a blockading squadron, in which case no freight is due. *Abbott*, 338. 367. 368. 8 *East*, 457. As to the main point contended for by the opposite side, it is most just that the contract should be dissolved. It is unreasonable that the goods should be detained to the certain injury of the owner, without benefit to the master. The goods may perish. An embargo differs from a blockade in being temporary in its nature. Until lately, long embargoes were never heard of. An embargo is the act of the government, and it is unlawful to break it; but there is nothing unlawful in the breach of a blockade. In *Clark* v. *Hadley*, (8 *T. R.* 259.) the action was brought by the owner of the goods against the ship owner, and he recovered damages. It is expressly laid down by Judge STOREY, in his edition of *Abbott*, that the blockade dissolves the contract. *Storey's Abbott*, 455. So it is said, by Sir WILLIAM SCOTT, that in case of blockade of the port of destination, the master may protest against being bound by the contract. 6 *Rob.* 177. 181. He also cited 1 *Valin*, 628, art. 9. 2 *Vern.* 242. 7 *Mass Rep.* 324. 436. 1 *Bl. Com.* 2 *Rob.* 124. 6 *Cranch*, 48, 49. 1 *Rob.* 93. 170, 171.

TILGHMAN C. J. This is a *replevin* for 631 barrels of flour. In the month of *March*, 1813, the defendant agreed to carry this flour, from the port of *Philadelphia* to the *Havanna*, in the ship *Minerva*, of which he was master, on freight at the rate of four dollars a barrel. The plaintiff, the owner of the flour, put it on board the *Minerva*, just about the time when notice was received of the blockade of the *Delaware* by a hostile British squadron. Some days after this, the plaintiff demanded of the defendant, either to proceed on the voyage, or return him his flour. The defendant refused to do either, except on conditions which the plaintiff would not accept. Issue was joined on the plea of property; so that the only question on the trial was, whether the property was in the plaintiff at the commencement of this action. That he had the general property, was not denied; but the defendant contended, that the agreement to carry on freight, being not dissolved, but only suspended by the blockade, he had a right to

1818.

STOUGHTON
v.
RAPPALO.

detain the flour during the blockade, in order to carry it to the *Havanna*, when the obstruction should cease. Whether the contract was dissolved, or only suspended, is a difficult question. It has been very well argued, but the Court does not think it necessary to decide it in this action. Where freight is earned, the master may detain the goods till the freight is paid. But it is not pretended, that any freight was earned in this case. On what ground then, can the defendant support the right of detention? It was to be expected, that the blockade would continue a long time. . Summer was approaching, and during the hot months flour is a perishable article, or at least it is subject to that kind of damage which renders it of little value. Was it to remain on ship board till it was spoiled, and then the very subject of the contract be destroyed, under the pretence of preserving the contract? This would be absurd. No authority has been shewn by the defendant's counsel, against the plaintiff's right to have his property re-landed and delivered to him, in a case like the present; and *Valin*, the most favourable of all the authors cited for the defendant, expressly says, (1 *Valin*, 628, art. 9,) that in case of blockade, the shipper has a right to release his goods, *without giving any security*, although, in consequence of a French ordinance, he must indemnify the master, in case the goods are not re-shipped when the blockade ceases. In case of goods of a perishable nature, this indemnification would be a matter requiring good consideration. But I shall give no opinion on that point. If the law allows the master indemnification or compensation, it must be sought in an action on the case. The plaintiff having proved his property in this case, and the defendant having shewn no right to detain it, I am of opinion, that the verdict ought not to be set aside.

GIBSON J. expressed his concurrence.

DUNCAN J. However the law may be in *England*, as to the action of *replevin;* whether it only lies in case of distress, as is held by some, 3 *Bl.* 145, or, whether, as held by others, it lies in all cases where the goods have been taken out of the actual possession of the owner, it is the established law of *Pennsylvania*, that it lies in all cases where a man claims goods in the possession of another. 1 *Dall.* 156. 6 *Binn.* 8.

It is a question of property. It is not like trover, which is an equitable action, and if the party has a legal or equitable lien on the property, it may be defalked in the damages assessed by the jury. But in a case where the claim of the defendant must be entirely uncertain, no fixed standard by which to ascertain it, the owner cannot know what sum to tender; and if a verdict passed against him in *replevin*, because he tendered too little, his property would be lost. Here the goods were delivered to the plaintiff. If there is a verdict for the defendant, it must be a general one; in which case there would be judgment *de retorno habendo*, and the defendant might, for the value of the goods, and not for the amount of the lien claimed by him, proceed against the sheriff or the pledges. In the action the jury could not award damages to the defendant.

The taking here, not being tortious, the plaintiff must prove property. If the taking were wrongful, this burden would lie on the defendant. The plaintiff has proved property. The defendant cannot claim a lien on the ground of freight; for no freight was earned, and it is impossible to say certainly, that it would have been earned, had there been no blockade; for still the voyage might not have been safely performed. The plaintiff had done every thing on his part. The defendant was not prevented from earning it by any breach of contract on the part of the plaintiff.

It is not necessary, as this case comes before the Court, to decide, whether the defendants were entitled to any compensation, and if to any, what. The occasion does not call for an opinion on the question, whether the contract is dissolved or suspended. Although no direct decision has been produced, yet it appears from writers, whose opinions are entitled to great respect, and such, too, would appear to be the reason of the thing, independently of direct precedents, that in case of a cargo such as this, perishable in its nature, which, if kept on board during the continuance of the blockade, would have been spoiled, or if secured on shore, must be greatly deteriorated, that the owner had a right to have such cargo unladen, and to the possession of it, and the power to sell it, without giving any security to replace it. If this be so, the defendant could have no lien on the cargo. For the doctrine of lien is founded on the possessor's right to detain, until the lien is discharged. When the possession

1818.

STOUGHTON
*v.*
RAPPALO.

1818.

STOUGHTON
v.
RAFFALO.

is gone, the lien is gone. The remedy of the defendant for compensation, if he has any, is not by detaining the goods, nor action for recovery of freight; but an action for the recovery of damages for not being suffered to carry it.

New trial refused.