# Tibbal *against* Cahoon.

If the plaintiff in replevin gives bond with surety to prosecute his suit with effect, and without delay, and also to make return of the property, if a return should be adjudged by law, and the defendant claims the property, and retains it, giving bond, and afterwards arbitrators award no cause of action, the plaintiff's surety is liable on the bond for the costs of the replevin suit. .

*Quære*, whether the action on a replevin bond, given by the plaintiff to the sheriff, and assigned by him to the defendant, should be in the name of the sheriff or of the assignee.                                           •

ERROR to the common pleas of *Erie* county.

The opinion of the court, which contains a full statement of the case, was delivered by

KENNEDY, J.—This was an action of debt, brought by Charles W. Cahoon against Charles M. Tibbal, the plaintiff in error, upon a bond executed òn the 12th day of November 1838, by Jonah Dib-

[Tibbal v. Cahoon.]

ble and the said Tibbal, binding themselves jointly and severally, to A. Scott, Esq., high sheriff of the county of Erie, in the sum of 100 dollars, to be paid to the said Scott, his certain attorney, executors, administrators, or assigns; upon condition, however, that if the above bounden Jonah Dibble should be and appear before the judges of the court of common pleas, to be holden in and for the county aforesaid, on the first Monday of February next, then and there to prosecute his suit with effect, and without delay, against Charles W. Cahoon, for taking and unjustly detaining his goods and chattels, to wit: one pale red cow, of the price of 25 dollars lawful money of the United States, and also to make return of the said goods and chattels, if a return thereof should be adjudged by law, and also save and keep harmless the said sheriff touching the replevying of the goods and chattels aforesaid; then the above obligation to be void and of none effect, or else to be and remain in full force and virtue." A case was stated by the parties for the opinion of the court, showing that Cahoon, the defendant in error, who was also the defendant in the action of replevin, claimed property in the cow, when the sheriff came to execute the writ, and retained the possession of her, by giving to the sheriff his bond, with surety, conditioned for his appearing to the writ, and establishing his right of property in the cow. That he did appear accordingly, and upon a trial had before arbitrators, to whom the cause was duly referred for determination, obtained an award in his favour, establishing his right of property in the cow, and for the recovery of his costs: that Jonah Dibble, the plaintiff in the writ of replevin, suffered the award of the arbitrators to become final, and to have the effect of a judgment of the court whence the writ was sued out; but neglected and failed to pay the costs, for which Cahoon, the defendant therein, obtained a judgment against him. Previously to the institution of this action, the bond, upon which it is founded, was assigned by the sheriff, by an endorsement on the back of it, executed in writing, under his hand and seal to Cahoon, in the presence of two subscribing witnesses. No question, however, was made, either in the court below or here, whether the bond was assignable or not, so as to enable the assignee of the obligee to maintain a suit upon it in his own name. The only question submitted to the court below, which is all that has been argued here, is, whether a defendant in an action of replevin, who has, on the plea of property in the goods which he retained in his possession, by giving to the sheriff a bond, with surety, in the usual form, for establishing his right, when the sheriff came to execute the writ of replevin, recovered a judgment for costs, be entitled, upon failure of the plaintiff in the replevin, to pay such costs, to recover them from the surety in the bond given by the plaintiff in the replevin. If the plaintiff in error be liable to the payment of these costs upon his bond, the judgment must be affirmed, though it may be that the suit ought to have been brought in the name of the sheriff, the obligee in the bond, because bringing it in the name of the

assignee, the defendant in error, being a mere technical objection at best. would seem to have been waived by the plaintiff in error; in order that he might have the case decided upon its merits.

The condition of the bond given by the plaintiff in the replevin, and the plaintiff in error here, as his surety, is, that the plaintiff there should prosecute his suit with effect and without delay, and also make return of the cow, if a return thereof should be adjudged by law, &c. But it is clear, that the defendant in the replevin, by claiming property in the cow, and giving bond to the sheriff, with surety, to appear in court to answer the plaintiff, and establish his right thereto, became entitled to retain the possession of the cow himself, until the question of property should be decided against him; and having retained the possession accordingly, that part of the condition of the bond, providing for a return of the cow, consequently became inoperative by the act of the defendant himself in the replevin, so that under it he could not well claim either payment of his costs, or a return of the cow afterwards. But still, notwithstanding it was thus rendered unavailing, was not the plaintiff bound to comply with the first part of the condition, requiring him to prosecute his suit with effect, and may not this cover the costs in the replevin adjudged to the plaintiff below in this action? The authority to maintain the action of replevin in this state seems to be founded upon an act of assembly passed in 1705, whereby it is enacted, that " it shall and may be lawful for the justices of each county, in this province, to grant writs of replevin in *all cases whatsoever where replevins may be granted by the laws of England, taking security as the said law directs;* and make them returnable to the respective courts of common pleas in the proper county, there to be determined according to law." 1 *Dallas's State Laws* 59; Weaver *v.* Lawrence, 1 *Dall.* 150–5. Notwithstanding this act expressly confines the granting of replevins to cases where by the laws of England they may be granted, which can only be for goods taken either wrongfully, or as a distress; *Com. Dig.* tit. Replevin, Λ; tit. Pleader, 3 *K.* 1; yet usage commencing probably with the act itself, has extended the writ of replevin to every case where the plaintiff claims goods in the possession of another. Weaver *v.* Lawrence, 1 *Dall.* 151; Shearick *v.* Huber, 6 *Binn.* 3; Wood *v.* Nixon, *Addis.* 134; Stoughton *v.* Rappalo, 3 *Serg. & Rawle* 562. In practice, therefore, it is clear that the terms of the act have not been strictly adhered to; most probably because it was conceived that the writ of replevin was the only effectual remedy that could be resorted to and applied, in many cases where goods claimed by the plaintiff happened to be in the possession of a worthless defendant, as it either enabled the plaintiff to obtain the immediate possession of them, or otherwise good security for the value of them, upon his establishing his right to the recovery of them. Seeing, then, that the plaintiff has been thus indulged with the advantages attending the remedy by replevin, over that of trespass or trover in such cases,

[Tibbal v. Cahoon.]

it would seem only fair, on the other hand, that the defendant in the writ should have every benefit which can be afforded him, by a fair and reasonable construction of the bond and its condition in his favour, which the plaintiff is bound to give the sheriff, before the latter can be required to execute the writ. Now although the plaintiff in the replevin cannot be called on to return the goods according to the condition of his bond, where the defendant claims property in them, and has retained the possession of them, by giving bond, with sureties, to the sheriff, yet that need in nowise prevent him from prosecuting his suit with effect, that is, with *success*, according to the true legal meaning of this phrase, contained in the first part of the condition of his bond. The design of the condition, according to its tenor, is to furnish the two kinds of pledges, which it is the duty of the sheriff to take before he executes the writ. "The sheriff," says Lord Coke, " ought to take two kinds of pledges, one by the common law, and they be *plegii de prosequendo,* and another by statute, (stat. of *West.* 2,) viz. *plegii de retorno habendo.*" Anterior to the passage of *West.* 2, 13 *Ed.* 1, stat. 1, cap. 2, the *plegii de prosequendo* were at first taken to answer the amercement to the king *pro falso clamore,* as in other cases, in case the plaintiff failed to prosecute his suit with success; and being of small account soon came to be disregarded and looked upon as mere matter of form. *Gilb. on Replevin* 65. To remedy this inconvenience, that statute directed, "that sheriffs or bailiffs, from thenceforth, should not only receive of the plaintiffs pledges for *pursuing* of the suit, before they made deliverance of the distress, but also for the return of the beasts, if return should be adjudged." Thenceforth it became the practice with sheriffs in England to take bonds, with real sureties, for the sufficiency of which they were held responsible, of plaintiffs in replevins, conditioned for prosecuting their respective suits with effect, and for a return of the goods as in the present case. *Gilb. on Replev.* 67–8: Blackett *v.* Crissop, 1 *Lord Raym.* 278. I do not know that the full extent of the liability of the sureties in such bond has as yet been finally settled in England, but it has been decided here in Phillips *v.* Hyde, 1 *Dall.* 439, that the defendant in replevin, after judgment *de retorno habendo,* and a return by the sheriff of *elongatur,* is entitled to recover the costs of the replevin in an action upon the bond given by the plaintiff in the replevin. It is true, however, that in the case just cited, the goods in contest had been delivered by the sheriff, under the writ of replevin, to the plaintiff in the same, and that upon trial thereof a judgment was rendered against him for a return of them. But this does not appear to be sufficient to vary that case materially from the present, at least not in regard to the question under consideration; for it would rather seem to be a strained construction of the condition of the bond, to extend that part of it providing for a return merely of the goods, without more, in case a return thereof should be adjudged, to the payment also of the costs of the replevin. An obligation to

[Tibbal v. Cahoon.]

do this would seem to arise more naturally out of the clause, " to prosecute his suit with effect;" because having failed to do so, the result showed conclusively that the plaintiff in the replevin had put the defendant to the costs and charges of defending his right of property in the goods against an unjust claim, which the plaintiff in the replevin and his sureties stood pledged by their bond should not be the case. But if it were to be held, that the surety in such bond is not liable upon the clause, " to prosecute his suit with effect," for the costs adjudged to the defendant, upon failure of the plaintiff to prosecute his suit with success, the clause, though full both of meaning and force, would thereby be rendered wholly useless and entirely inoperative; because it is perfectly clear, that he cannot be made liable to the payment of any *amercement* here to the commonwealth, *pro falso clamore*, according to the design for which pledges of prosecution were originally required and taken in England. Such an amercement never was assessed in this state; nor has it, I apprehend, been in England since the grant of this state, as a province, to William Penn. And, indeed, it is most probable, that it never was, even there, assessed in any case where the defendant was entitled at the time to recover costs of the plaintiff, upon the latter's failing of success in his suit; because it would seem, that costs were given to defendants to supply the place of such amercements. In the noted case of Saville *v.* Roberts, 1 *Lord Raym.* 380, Lord Holt, after stating that the common law, in order to hinder malicious, and frivolous and vexatious suits, required that every plaintiff should find pledges, who were amerced, if the claim was false; which judgment the court theretofore always gave, and then a writ issued to the coroners, and they affeered (assessed) them, according to the proportion of the vexation, and referring to Griesley's case, 8 *Co.* 78, *Fitzherb.* N. B. 174–5, [76,] says: " but that method became disused, and then to supply it the statutes gave costs to the defendants." It would, therefore, seem to be necessary as well as reasonable, in order to give effect to the design of the law, as also to the intent of the parties, to hold, that when real sureties are given by the plaintiff, that he will prosecute his suit with effect, they become liable for the payment of the costs, which shall be adjudged to the defendant, if the plaintiff fails in his suit.

Judgment affirmed.