## The Select and Common Councils of the City of Williamsport *versus* The Commonwealth *ex rel.* Bair and Shenk.

1. A peremptory mandamus may issue to a city treasurer, to compel him to pay the overdue interest on the city bonds, although the money in his hands may have been appropriated by city councils to other uses; provided the amount thus withdrawn from the city treasury is not absolutely needed for the ordinary expenses of the city.

2. The city treasurer cannot require those who present coupons for payment to give the numbers of the bonds from which they were cut, and a history of their claim of title thereto.

3. Nor can a city treasurer, as a defence to an attachment for a refusal to obey a mandamus, set up that the amount of the coupons thus presented, was largely in excess of the moneys in his hands, and that therefore he could not discriminate between them and must decline to pay them all.

4. Mandamus is a civil proceeding, within the meaning of the Act of March 30th 1875, providing, "that changes of venue shall be made in any civil cause in law or equity depending in any of the courts of this Commonwealth," in the particular cases specified in said act.

June 9th 1879. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, and Sterrett, JJ.. Woodward, J., absent.

Error and certiorari to the Court of Common Pleas of *Columbia county:* Of May Term 1879, Nos. 151 and 152.

The venue in this case was changed from Lycoming to Columbia county, under the provisions of the Act of March 30th 1875, Pamph. L. 35.

The writ of error was taken to review the action of the court in making an order upon Daniel Longsdorf, treasurer of the city of Williamsport, directing him to pay the overdue interest on certain bonds of said city, and the certiorari to the action of the court in granting an attachment against said treasurer for refusing to obey said order.

The facts, in substance, were these: In the case of City of Williamsport *v.* Commonwealth *ex rel.* Bair and Shenk, 3 Norris 487, the Supreme Court made a decree, wherein the treasurer of the city of Williamsport was ordered to apply any money in the

[City of Williamsport *v.* Commonwealth.]

treasury of said city, not otherwise appropriated, to the payment of the accrued interest, or, overdue coupons, on certain bonds of said city known as "series A."

On November 3d 1877, a peremptory mandamus was issued by the Court of Common Pleas of Columbia county, directed to the councils of the city of Williamsport and the treasurer thereof, in pursuance of said decree. This writ was returnable December 3d 1877, and on that date was returned duly served.

On December 3d 1877, the court issued an order to restrain said treasurer from paying out any money in his hands. On December 12th 1877, the court rescinded so much of this order as would leave the treasurer free to pay out moneys for the necessary current expenses of the city. On January 4th 1878, the court again granted a rule on the treasurer to show cause why he should not be restrained from paying out moneys. On March 13th 1878, the court discharged this rule on the ground that from the testimony taken, it appeared that the money in the treasury was not more than sufficient to meet the current expenses of the city, and because the city officials had testified that councils were proceeding to levy and collect the tax required by the mandamus.

In May 1878, the city councils did levy a tax, but made no provision whatever therein, for the payment of the overdue interest, or even for the payment of interest on the city bonds, which was falling due in 1878, but proceeded to appropriate the whole of this tax to general city purposes. No proceeding was had to obey the mandamus until September 1878, when an ordinance was passed under the provisions of the Act of March 22d 1870, Pamph. L. 535, to levy a special tax to pay the overdue interest. No duplicates, however, were placed in the treasurer's hands for collection, and no effort made to collect this tax; when, on February 11th 1879, a rule was granted on councils and the treasurer, to show cause why the latter should not apply the amount in his hands to payment of the overdue interest on the bonds in question. The city councils and treasurer both filed answers, and it appeared from the evidence of the treasurer and city controller, that the current expenses for the year would not exhaust the whole fund in the city treasury. Upon these facts the court below made an order, March 10th 1879, that the treasurer pay out of the moneys in his hands, the sum of $8000 on the overdue interest, on the ground, first, that it was raised by a tax levied long after the peremptory mandamus was issued, and was not appropriated till May or June 1878, and therefore should be paid on this judgment; and, second, that it would still leave sufficient funds in his hands to pay the running expenses of the city to the end of the fiscal year, April 1st 1879.

To this order the defendants took this writ. They also alleged that the court erred in making said order, because of want of juris-

[City of Williamsport *v.* Commonwealth.]

diction, the Act of March 30th 1875, providing for change of venue, having no reference to proceedings by mandamus.

The city treasurer did not comply with the order of the court, but filed an answer, which, inter alia, set forth that respondent was entitled to a hearing and an opportunity to cross-examine witnesses, and to rebut the evidence offered in support of the application; that respondent has no interest in the payment of the interest, other than as city treasurer, and that under the advice of the city solicitor, respondent had required relators, as well as other parties holding coupons, to give the number of the bonds, the names of the owners, and from whom the title to the same was derived, with the view of presenting the same to councils to see if there was any specific defence to the same, as respondent was notified by the authorities of the city of Williamsport, that there was such defence to the payment of a large number of these bonds marked "series A;" that respondent has paid judgments recovered on said coupons maturing prior to November 3d 1877, amounting to $2999.29, under the advice of the city solicitor, and that the balance of the $8000 he has in his hands subject to the order of the court. On the 29th March 1879, the court ordered an attachment to issue against the treasurer for contempt of court, unless on or before the 3d day of April following, he should pay $5000 upon those coupons maturing prior to November 3d 1877, which should first be presented for payment under the order of March 10th 1879.

The certiorari in this case was then taken to review the action of the court in awarding this attachment. The $5000 remained in the hands of the treasurer to await the judgment of the supreme court.

*H. C. McCormick*, for plaintiff in writ of error.—The court below had authority to appropriate for the payment of overdue interest on bonds only the money not assigned for current expenses even if not specially appropriated. The current expenses must be first paid; what remains over could be applied to the bonds. A creditor of a corporation cannot stop the functions of government by an order such as made by the court below: Commonwealth *v.* Commissioners of Philadelphia, 1 Whart. 1; Same *v.* Same, 2 Id. 286; Commonwealth *v.* Floyd, 2 Pittsburgh 345. The treasurer had the right to make an inquiry as to the title to the coupons, for the amount thereof was largely in excess of the $8000. He could not discriminate between them, and therefore could not pay any of them.

This case was begun in Lycoming county, and under the Act of June 14th 1836, Pamph. L. 626, should have been carried on to execution in said county: Whitemarsh Township *v.* Railroad Co., 8 W. & S. 365; Wolf *v.* Commonwealth, 14 P. F. Smith 252.

[City of Williamsport v. Commonwealth.]

The Act of March 30th 1875, provides only for a change of venue "in any civil cause in law or equity." Mandamus is not a civil cause in law or equity within the meaning of the act: Commonwealth ex rel. Witmer v. Commissioners of Lancaster Co., 6 Binn. 5.

*B. S. Bentley,* for defendant in error.—The $8000 had not been specially appropriated, and it was therefore apparent was not needed for current expenses. A mandamus has all the qualities and attributes of a civil action : High on Extraordinary Legal Remedies, sect. 8, p. 10 ; Commonwealth ex rel. v. Commissioners of Allegheny Co., 8 Casey 221. The Act of June 14th 1836, restricts the power of the Courts of Common Pleas in the issuing of writs of mandamus to the limits of their respective counties, but the Act of March 30th 1875, sect. 4, provides that the court into which a cause is removed " shall proceed to trial in the same manner and give judgment and award execution with like effect as though the cause had not been removed." The latter act does not repeal the former, but only gives jurisdiction to another Court of Common Pleas in certain cases. Besides, the mandamus was issued by the Court of Common Pleas of Lycoming county on the 7th day of July 1876, and it was only upon the return to the writ, made by defendants raising an issue of fact, that the court awarded a change of venue and the peremptory mandamus of November 3d 1877, and all orders subsequent thereto were simply the execution process of the court after final decree and judgment, as provided for in the Act of 1875. After execution and decree in the Supreme Court, no exception can be taken to want of jurisdiction.

*H. W. Watson,* for plaintiff in writ of certiorari.—The treasurer had no opportunity afforded him of a hearing, the rule being granted upon affidavits made by counsel for holders of coupons. He put in an answer which was judged insufficient by the court, and the attachment ordered to issue by the 3d day of April 1879. A rule should have been granted, a full hearing and an opportunity for cross-examination: Commonwealth v. Snowden, 1 Brewst. 218. In this case there was no hearing, as required by law. The defendant had no opportunity offered him of cross-examining the persons who made the affidavits. His answer expressly denies any intention of being guilty of any contempt of court, and demands a full hearing ; and we respectfully submit that the court erred in awarding the attachment. If the city cannot make any inquiry as to the coupons presented for payment, then the decision of this court when they say, " In affirming this judgment, we do not mean to deprive the city of any special defence to any particular bond or bonds in 'series A,' and not embraced in this suit," is without meaning and utterly valueless to the city.

*J. O. Parker* (with him *J. A. Beeber*,) *contra.*—The attachment was allowed after a full hearing had on the rule granted to show cause on the 11th of February 1879, and a decree made. It was issued for disobedience to this decree. An affidavit was filed, notice was given of the application for the attachment, and the treasurer filed an answer. This was in strict pursuance of the practice in granting attachments. There was nothing on which testimony could be taken. The treasurer was governed by the city solicitor and we cannot reach him. It would be impossible to give the claim of title to the bond itself, much more of the coupon cut therefrom. The coupons are as much negotiable securities as bank notes, and pass by delivery. Counsel presenting coupons were entirely willing to give the names of the owners, but that was not sufficient.

Mr. Justice PAXSON delivered the opinion of the court, June 23d 1879.

The proceeding, out of which the orders complained of grew, was a writ of peremptory mandamus issued at the relation of certain creditors of the city of Williamsport, to compel the councils of said city to make provision for, and pay the arrears of interest due upon its bonds, and to provide for the accruing interest. The question of the validity of these bonds was before this court and settled, in City of Williamsport *v.* The Commonwealth ex rel. Bair and Shenk, 3 Norris 487. In affirming the judgment in that case we said: " We do not mean to deprive the city of any special defence to any particular bond or bonds in " series A," and not embraced in this suit." This was intended, as the language implies, out of abundance of caution, to save the right of the city to make any special defence, not set up in that suit, to any special bond or bonds not embraced therein. It was not intended, nor can we allow it to be used as a pretext for not paying the interest on all bonds whatever. It was a part of our judgment, " that the treasurer of the city of Williamsport do forthwith apply any money now in the treasury of said city, and not otherwise appropriated, to the payment of the accrued interest or coupons now overdue on said bonds, known as " series A." The record now before us discloses the fact, that since our judgment was entered, October 4th 1877, the court below has been constantly engaged in an attempt to enforce our decree. It issued a peremptory mandamus on November 3d 1877, and the docket entries since that time and up to the month of April 1879, when the present writ of error and certiorari were filed, show an unusual degree of activity, with results not encouraging to holders of municipal bonds. Passing by those matters which are not material, we come to those orders of the court below of which complaint is now made, and which are assigned for error. First, we have the order of March 10th 1879,

by which the treasurer of the city of Williamsport was directed to pay the sum of $8000 on overdue interest, on bonds known as "series A." This order was made upon a rule granted February 11th 1879, on Daniel Longsdorf, treasurer of said city, to show cause why he should not apply the amount in his hands, as treasurer, in payment of overdue interest on the said bonds, which was due and payable prior to the third day of November 1877. To this particular order a writ of error was taken, and we are called upon to pass upon its propriety.

Somewhat similar rules to show cause had previously been discharged by the court below, upon the ground that a mandamus or statutory execution ought not to be enforced to the extent of withdrawing from the city treasury, the funds absolutely needed for the ordinary expenses of the city. A previous order to pay had been vacated *ex parte*, upon the city coming in and showing that all the money in the treasury would be required to defray expenses, up to September 1st 1878. Says the learned judge: "It was also contended that there was no occasion for the order; and it was testified by officials of the city, that the councils were proceeding to levy and collect the tax required by the mandamus in this case as early as practicable. In view of these facts, we discharged the rule. If what was then stated would be the case, had been actually carried out, there would have been no occasion for this rule. It is now one year since that hearing was had; the interest has not been paid, and the facts presented in answer to this rule are nearly identical with those testified before us at that time." The learned judge, after ascertaining that the withdrawal of the sum of $8000 from the treasury would not embarrass, much less stop the wheels of the municipality for the fiscal year, ending April 1st 1879, made the order which is the subject of this contention. In doing so he was clearly right. In his own words it was giving "to the creditors referred to in the rule, a small portion of what under the decree of the Supreme Court they were entitled to months since."

We now come to the subsequent order of March 29th 1879. The city treasurer having neglected and refused to comply with the order of March 10th, to pay over the money referred to, he was duly notified that an application would be made to the Court of Common Pleas on the 29th of March 1879, for an attachment against him for contempt in disobeying the said order. The treasurer appeared on the said day, and filed an answer under oath, disavowing generally any intention of committing a contempt, and setting forth specifically as reasons for not having complied with the order of the court, inter alia, the following: 1. That the city solicitor had advised him to require all persons holding coupons for interest maturing prior to November 3d 1877, to give him the numbers of the bonds, the names of the owners, and from whom the title to the same was derived, in order that he, the said

[City of Williamsport *v.* Commonwealth.]

treasurer, might report the same to councils with a view to ascertain whether or not there was any specific defence to the payment of any of the coupons so presented.    2. That the said treasurer had paid out of said sum judgments recovered on coupons amounting to $2999.29.    There were a number of other matters set up in the answer which we do not consider it important to notice.    The court below recognised the payment of $2999.29 as proper; but the remaining reasons were possibly regarded as frivolous, as on the same day the rule for attachment for contempt was made absolute, and the attachment directed to issue against Daniel Longsdorf, treasurer, "unless he shall, on or before the third day of April next, pay the sum of $5000, now in his hands, upon those coupons maturing prior to November 3d 1877, which were first presented to said treasurer for payment, under said order of March 10th 1879." The treasurer did not pay, and before the 3d of April arrived, removed the record and proceedings to this court upon a writ of certiorari.

There was nothing in the answer of the treasurer to cause the court below to hesitate, much less to require discussion here. That it is the duty of the holder of a coupon, a thing that passes by delivery like a bank note, to give a history of such coupon, with the chain of title at the counter where he demands payment, is a proposition that need not be seriously considered.    A coupon is always numbered with the number of the bond from which it was cut.    This enables the owners of stolen bonds to stop the payment of the coupons.    But it was never supposed that by stopping the payment of the coupon, you could thereby ascertain if the bond were stolen.    If the city of Williamsport has a just defence to one or more bonds, the fact must certainly be known to the authorities, with the date and number of the bond, and the name of the person to whom issued, and a proper notice from them to the treasurer would enable him to decline payment for such reason when such coupons are presented.    But payment ought not to be declined for frivolous reasons.    In the absence of any notice from the city authorities not to pay particular coupons by reason of a defence to the bonds to which they belonged, the city treasurer incurred no responsibility by payment.    The order of the court would be a full protection to him: Monaghan *v.* The City, 4 Casey 207; In re Sedgley Avenue, 8 Norris 509.    Equally untenable was the position, that because the amount of coupons presented was largely in excess of the amount of money on hand, $8000, he could not discriminate between them, and must therefore decline to pay any of them.

A further objection was made to the orders of March 10th and March 29th, that the Act of Assembly of March 30th 1875, does not authorize a change of venue in proceedings by mandamus, and consequently the Court of Common Pleas of Columbia county, to

[City of Williamsport v. Commonwealth.]

which the cause had been removed, had no jurisdiction. It was certainly late to make this objection, after a final decree in this court. We will, however, consider it as if the point had been made at an earlier stage in the proceedings.

The Act of 30th March 1875, Pamph. L. 35, provides, "That change of venue shall be made in any civil cause in law or equity depending in any courts of this Commonwealth," in the particular cases specified in said act. It was not denied that the cause was removed for one of the reasons enumerated in the act, but it was alleged that a mandamus was not "a civil cause in law or equity," and the case of Commonwealth v. The Commissioners of Lancaster County, 6 Binn. 5, was cited in support of this view. A careful examination of that case, however, will show that it is not authority for any such principle. It was a rule for a mandamus, issued out of this court, upon the commissioners. The jurisdiction was denied for the reason that the Act of 24th February 1806, declares that "the Supreme Court shall have no jurisdiction in civil cases." The court sustained its jurisdiction upon the ground that it was manifestly the intent of the legislature by the act in question not to take away the mandamus jurisdiction from the Supreme Court, for the reason that at that time the Common Pleas had no power to issue such writs. Says TILGHMAN, C. J.: "At the time the law was passed the Supreme Court were overwhelmed with business arising from civil actions commenced in the city and county of Philadelphia. Before the year 1786, no such actions were commenced in this court, and it was judged proper to place its jurisdiction on the same footing that it formerly stood." The court in placing a construction upon the language of the Act of 1806, very properly looked to the mischief to be remedied. Therefore, whilst it was admitted that the term "civil cases" in its broadest sense might include the case of a mandamus, yet in its application to the mischief, it must be held to mean "civil actions, which in common parlance do not comprehend writs of mandamus, certiorari, habeas corpus," &c. Turning now to the Act of 1875, it is plain to us that a mandamus is as much within the mischief sought to be remedied as any other cause. Without going over the details of the act in which the causes for which a change of venue may be had, we will refer only to two of the reasons assigned: "Whenever the judge, who by law is required to try or *hear* the same, shall be personally interested in the event of such cause, or in the question to be determined thereby;" and 2, "Whenever any near relative of such judge shall be a party to any such cause, or interested in the event thereof." These reasons for a change of venue apply with as much force to a mandamus as to any other form of proceeding. The act in question is remedial and must have a liberal interpretation. The tendency of recent legislation has been liberal in the matter of change of venue. This is noticeable in the Act of 18th

March 1875, Pamph. L. 30, in regard to the change of venue in criminal cases. Whilst a mandamus is not in common parlance a civil cause, it is so in its broad sense, being really in th's case but a proceeding for the collection of money.

It is said in High on Legal Remedies, p. 10, sect. 8 : "While in this country the writ (mandamus) has been regulated by constitutional and statutory enactments, it has lost but few of its ancient remedial incidents, and is still governed by common-law rules, where such rules have not been abrogated. Though in form and name the proceedings partake somewhat of a criminal nature, yet the remedy is in substance a civil one, having all the qualities and attributes of a civil action. And since the proceeding has all the elements of an ordinary action at law, including parties, pleadings, mesne and final process, it is regarded as an original proceeding or suit, rather than the more final process of a suit, or a mode of obtaining execution on a judgment." And in the case of Commonwealth ex rel. *v.* Commissioners of Allegheny County, 8 Casey 221, it was said by Mr. Justice WOODWARD, that "a mandamus under our statute assumes the form of an ordinary action at law, and all questions properly arising are to be tried in the same manner as was formerly done at common law in the action for a false return." We are of opinion that the case came within the Act of 30th March 1875, and that the cause was properly removed to Columbia county. It follows that the court had jurisdiction.

We regret to see a disposition, only too apparent upon the face of this record, to evade our decree of October 4th 1877. Perhaps too much importance has been attached to the fact that there was a difference of opinion between some of the members of the court as to the principles which should govern the case. Be that as it may, it is only proper to say that the court is a unit in the enforcement of our decree. No man or corporation in Pennsylvania is strong enough to successfully evade, much less resist the decree of this court. It has been attempted in the past, with what success is a matter of history. From the date of our decree to the present time, the city of Williamsport, has not, to our knowledge, voluntarily paid a dollar of interest to its bondholders. It is sincerely hoped that wiser counsels will ultimately prevail, and that we may see that obedience to law manifested which the Commonwealth has a right to demand from every citizen and municipality within her borders.

This record is entirely barren of error, and the proceedings are affirmed upon each writ. It will be the duty of the court below to compel prompt obedience to its order.