(47 App. Div. 295.)

## HUNT v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. January 9, 1900.)

1. MUNICIPAL CORPORATIONS—CONTRACTS—PLEADING—EVIDENCE.

In an action brought against a city on a contract, where plaintiff alleged that proposals were duly advertised for, defendant will not be permitted to prove a defect in the publication of the advertisement for proposals under a general denial, such defect not being specially pleaded.

2. SAME—REVENUE.

Laws 1896, c. 112, § 13, provides that revenues from liquor tax certificates accruing to any town or city shall be expended by such town or city in the manner now provided for the appropriation and expenditure of excise licenses. Laws 1892, c. 401, provides for the expenditure of excise moneys. *Held* that, though Laws 1896, c. 112, repealed Laws 1892, c. 401, the provisions of the latter for appropriation of excise moneys are continued in force.

3. SAME.

A common council, in the absence of a special direction as to the application of an excise fund, has the right to apply it in any manner not inconsistent with the charter provisions, under Laws 1896, c. 112, § 13, providing that such money shall be expended by a town or city in such manner as is now or may hereafter be provided by law for the appropriation and expenditure of sums received for excise licenses, or in such other manner as may hereafter be provided by law; and Laws 1892, c. 401, § 15, providing that such money shall be applied to the payment of the ordinary expenditures payable from the general fund of the city or town, respectively, unless otherwise provided by a special or local law.

4. SAME.

The current receipts of money derived from liquor taxes under Laws 1896, c. 112, providing that such receipts shall be at the disposal of the council, cannot be considered as unappropriated until the end of the year, so that the city treasurer may transfer them to the sinking fund, under Laws 1889, c. 548, revising the charter of Long Island City, which empowers the city treasurer to transfer to a sinking fund such sums in the treasury as are not by law appropriated or applicable to any purpose.

Appeal from trial term.

Action by Thomas P. Hunt against the city of New York. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Carr, for appellant.

George W. Stephens, for respondent.

PER CURIAM.[1] This action was brought to recover on a contract made between the plaintiff and Long Island City (now merged into the city of New York) for repairing a bridge across Dutch Kills creek in said city. The complaint alleged the advertisement for proposals for said work, the execution of the contract by the city, and its performance by the plaintiff. The answer, after the admission of the incorporation of Long Island City, and its subsequent merger into the present defendant, contained substantially a general denial of the allegations of the complaint, and as an af-

[1] This opinion was written by Mr. Justice CULLEN before his designation as an associate judge of the court of appeals, and is adopted by this court.

firmative defense set up the provisions of the charter of Long Island City (section 16, tit. 3, subc. 1, c. 461, Laws 1871), by which it was enacted that it should not be lawful for the common council to incur liability for the payment of any money, or direct any work for the payment of which the city might become liable, beyond the amount of cash applicable for the particular purpose then in the treasury of the city, and provided that all contracts made contrary to this direction should be void. It then alleged that there were at the time no cash funds or balance in the account to which this contract was chargeable. On the trial the plaintiff proved the execution of the contract, and its performance. Evidence was given from the city books of accounts, and by experts who had examined them, as to the state of the balance or condition of the special city accounts. The defendant offered evidence to prove that the notice of proposals for the work was not published a sufficient number of days or times. This evidence was excluded on the ground that such defect was not pleaded, and at the conclusion of the evidence the court directed a verdict for the plaintiff, and from the judgment entered upon that verdict this appeal is taken.

We think the evidence as to the defect in the publication of the notice was properly excluded. The general rule is that, where a contract is valid on its face, its illegality on account of extraneous facts must be specially pleaded. Brennan v. Mayor, etc., 62 N. Y. 365; Milbank v. Jones, 127 N. E. 370, 28 N. E. 31. The appellant concedes the correctness of this rule, but contends that, because the plaintiff alleged in his complaint, though unnecessarily, that proposals were duly advertised for, the general denial in the answer put that allegation in issue, and permitted the defendant to prove a failure to advertise to the same extent as if it had been set up as an affirmative defense. There is some strength in this claim, and to a certain extent its fairness and propriety may be conceded. If, under these pleadings, the defendant had sought to prove that advertisements for proposals had not been made at all, it may be that evidence of such fact should have been allowed, or the defendant permitted to amend its pleadings. But the evidence offered was not of this character. It was simply to show that the request for proposals was not advertised a sufficient number of times, or at a sufficiently early date. These defects, we think, the defendant should have specially charged in its answer, in order that the plaintiff might be not taken by surprise on the trial. If the rule of pleading should be relaxed at all in defendant's favor on account of the allegations in the complaint, that relaxation should not be carried so far as to permit it to show these irregularities in the advertisement, without specially setting them up in the answer.

From the books and the testimony of the experts it appears that the account of "Road and Street Funds of the First and Second Wards," to which the cost of this work sued for would be chargeable, was, on its face, at the time the contract was let, exhausted. The reason for this was that the taxpayers, to a large extent, had made default in the payment of taxes, and the city treasurer had credited to each city account not the full amount provided for in

the tax budget, but the pro rata share of that account in the taxes actually paid. The respondent insists that the account should be credited with the full amount allowed for it in the tax budget, because by law it was made the duty of the city treasurer on the 1st of July to certify to the common council the amount of unpaid taxes, and then it was incumbent on the mayor and common council to issue bonds to make up the arrearage, though in fact such bonds were not issued, nor the arrearage made good. It is not necessary to determine this question, for, in our opinion, the account was made good in another way. When the common council directed the execution of the contract for this work, it, by resolution, authorized its payment out of the liquor tax moneys then paid to the city during the year. By section 13 of the liquor tax law (chapter 112, Laws 1896) it is provided that the revenues accruing from liquor tax certificates to any town or city shall be appropriated and expended by such town or city "in such manner as is now or may hereafter be provided by law for the appropriation and expenditure of sums received for excise licenses, or in such other manner as may hereafter be provided by law." We can find no special direction of law for the application of these excise moneys, and we have been referred to none except the excise law of 1892 (chapter 401), on which the plaintiff relies. It is true that the act cited was repealed by the liquor tax law. Nevertheless, its provisions for the expenditure of excise moneys were in force at the time of the enactment of the law of 1896, and are continued in force by the section cited. The laws of 1892 provided (section 15) that "such moneys shall be applied to the payment of the ordinary expenditures payable from the general fund of the city or town respectively, unless otherwise provided by a special or local law." The charter of Long Island City (chapter 461, Laws 1871), by section 12 of title 3, subc. 1, confers on the common council the general management and control of the finances, and all property, real and personal, belonging to the corporation. There are various restrictions placed on the power of the common council by other provisions of the charter, but, in the absence of any special direction as to the application of the excise fund, we think the common council had the right to apply that fund in any manner not inconsistent with the charter provisions. Therefore the transfer of the liquor tax money to make good a deficiency in a city fund created, not by expenditures in excess of the amount of such fund, but only by the failure to collect the taxes, was valid. The claim of the appellant is that the liquor tax moneys had already been transferred to the sinking fund by the city treasurer. The authority for this is based on the section of the charter already cited, as amended by chapter 548, Laws 1889. But, if we are right in our views that the liquor tax money was subject to the control of the common council, the current receipts of such money for any one year could not be considered by law unappropriated until the end of that year.

The judgment appealed from should be affirmed, with costs.