183 So. 265

**JOHNSON v. CITY OF SHEFFIELD et al.**

8 Div. 929.

Supreme Court of Alabama.
Sept. 8, 1938.

John C. Martin, of Sheffield, for appellant.

W. F. McDonnell and Andrews & Almon, all of Sheffield, for appellees.

412

KNIGHT, Justice.

Bill by J. K. Johnson, complainant, against the City of Sheffield a municipal corporation, the Board of Commissioners of said city, and others, seeking to enjoin an election called by the Board of Commissioners for authorization to issue and sell municipal bonds to provide funds for the construction of a school building, the purchase of lands for a site therefor, and the making of improvements and extensions to the existing school buildings. The bill also sought a declaratory judgment as to the validity of the ordinance calling the election, and providing for the issuance of the bonds, and seeks judicial determination of the following questions: "Whether the issuance of said bonds would cause the City of Sheffield to exceed its debt limit, whether such city is authorized to make a valid and binding ·pledge ˙to the payment of said proposed bonds of said ad valorem tax of one-half of one per centum now being put into the City's general fund, and whether such city is authorized to make a valid and binding pledge of its license taxes to the payment of the principal of, and interest on, said proposed bonds."

The complainant is a resident taxpayer in said city, and.·is engaged in the heating and plumbing business therein, and annually pays to the City of Sheffield a license tax for the privilege of carrying on such business.

The City of Sheffield is operated˙ under a commission form of government, and its Board of Commissioners has deemed it necessary to construct a new high school building, and to make certain improvements on, and extensions to the existing public school buildings, in order to meet. the present public school needs, the present. buildings being wholly inadequate therefor. The city, being without funds to pay for the construction of the new building and the improvements and extensions to the existing buildings, applied to the United States through the Federal Emergency Administration of Public Works for a loan and grant with which to finance this undertaking.

The city proposes to secure˙ the loan by the issuance and sale to the Federal Emergency Administration of $104,000 of its . "general obligation bonds," the payment of which bonds to be secured by the. pledge of an ad valorem tax of one-half of one

per centum on the property situated in the city, and also by the pledge of the city's license taxes. The Federal Emergency Administration of Public Works has agreed to make the loan and grant upon the above terms.

The Board of Commissioners of the City of Sheffield has adopted an ordinance calling an election on the proposed bond issue, such election to be held on September 19th, 1938. It is this election that the present bill is filed to enjoin. The injunction is sought on the grounds that the election would cause a useless and unnecessary expense to the city and would put the voters of the city to useless and unnecessary inconvenience, it being charged "that the issuance of the proposed bonds would cause the city to exceed its debt limit, and that the city has no authority to pledge its license taxes or the ad valorem tax now going to the general fund to the payment of the proposed bonds."

Upon submission of the cause the chancellor held: That the issuance of the proposed bonds would not cause the city to exceed its debt limit; that the city could lawfully pledge to the payment of the bonds the ad valorem tax of one-half of one per centum that is now being paid into the city's general fund; and that the city could make a valid pledge of its license taxes to the payment of the principal and interest on said bonds, "said pledge to be such that the holders of such bonds could compel future boards of commissioners of said city of Sheffield to levy license taxes in future years sufficient in amount to pay the principal of, and interest on the proposed bonds."

The City of Sheffield is authorized by the Constitution of Alabama—Amendment 8—to levy a total ad valorem tax of one and one-half per centum each year on the property situated therein. The said city is now levying, and has for a number of years levied, a tax of one and one-half per centum on all taxable property situated in the city. Only one-third of this tax goes to the general fund of the city, and the balance of the ad valorem tax is pledged to the payment of specific obligations. So, the city now operates on its license taxes and the one-half of one per centum levied upon the properties situated in the city.

The City of Sheffield is expressly exempted from the constitutional debt limit placed on cities and towns in Alabama. Constitution of Alabama, § 225.

In the outset it must be conceded that a municipal corporation can exercise only the following powers: Those granted in express terms; those necessarily implied in, or incident to, the powers expressly conferred; and those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality. New Decatur v. Berry, 90 Ala. 432, 7 So. 838, 24 Am.St.Rep. 827; Cleveland School Furniture Company v. Greenville, 146 Ala. 559, 41 So. 862; City of Eufaula v. McNab, 67 Ala. 588, 42 Am.Rep. 118; Ex parte Mayor, etc., of Town of Florence, 78 Ala. 419; Stokes v. City of Montgomery, 203 Ala. 307, 82 So. 663; Colvin v. Ward, 189 Ala. 198, 66 So. 98.

By express statutory grant municipalities in this state have full and continuing power and authority within the limits of the constitution now in effect or that may be hereafter provided, to issue and sell bonds (when such issue is authorized by an election, if such election is required by the constitution, but without an election if an election is not so required) for the purpose (among others) of constructing, reconstructing, enlarging or extending public buildings and public school houses and buildings, and to acquire the necessary land for the site for any building or improvement to be used for public purposes. General Acts 1935, p. 575, § 2; General Acts 1927, p. 534; Michie's Code of Alabama, § 2294 (6).

"The taxing power is conferred on municipal corporations, of course, for the purpose of providing means with which to meet their current expenses incurred in the performance of the duties resting on them as governmental agencies; and it may ordinarily be assumed that the means thus provided are adequate to the ends in view. Yet, in the nature of things, it is impracticable, if not indeed impossible, for the powers of such, or any, corporations to be exercised without incurring liabilities beyond the funds immediately in hand, and thus anticipating corporate revenues. In recognition of a necessity of this kind, it may be said that the law has come to be well settled to the effect that municipal corporations may create debts in the accomplishment of any object clearly within their powers, and reasonably essential to the attainment of their charter pur-

poses. Custom of long standing and universal adoption, if not expressed law, has sanctioned the evidencing of such debts by the drawing of warrants therefor on disbursing officers in favor of creditors." Allen v. Intendant & Councilmen of LaFayette, 89 Ala. 641, 644, 8 So. 30, 31, 9 L.R.A. 497.

■ There can be no doubt of the right of the City of Sheffield to construct school buildings and make repairs on, and extensions to existing public school houses. This must be conceded.

Section 2154 of the Code of Alabama confers upon municipalities the power to levy or impose license taxes. And this section expressly provides: "The power to license conferred by this article may be used in the exercise of the police power as well as for the purpose of raising revenue, one or both."

There is nothing in the statute suggesting, even in the slightest way, any limitation upon the use of the moneys derived by the municipalities from such taxes, except, of course, that it must be used for authorized, lawful municipal purposes.

■ It seems to be a well established principle of law that, in the absence of any specific direction as to the application of specific revenues, the municipality may apply them in any manner not inconsistent with the charter provisions. 44 C.J. Sec. 4543, p. 1372; Hunt v. City of New York, 47 App.Div. 295, 62 N.Y.S. 184. And McQuillon on Municipal Corporations, Vol. 1, p. 967, states the rule to be: "The use of the municipal revenue, except that required for specified purposes, is usually subject alone to the discretion of the local authorities."

Section 1908 of the Code provides that:

"All legislative powers and other powers granted to cities and towns shall be exercised by the council, except those powers conferred on some officers by law or ordinance. They shall perform the duties required in this chapter, including the following: * * *

"11. Except as otherwise provided herein, they shall have the management and control of the finances and all of the property, real and personal, belonging to the city or town."

In the case of Hunt v. City of New York, supra, it was observed by the Supreme Court of New York, with reference to the expenditure of certain excise money (62 N.Y.S. page 186): "We can find no special direction of law for the application of these excise moneys. * * * The charter of Long Island City * * * confers on the common council the general management and control of the finances, and all property, real and personal, belonging to the corporation. There are various restrictions placed on the power of the common council by other provisions of the charter, but, in the absence of any special direction as to the application of the excise fund, we think the common council had the right to apply that fund in any manner not inconsistent with the charter provisions."

Section 60 of the Municipal Code, Gen. Acts 1927, pp. 534, 549 (Michie's Code, Sec. 2294 (60), after providing that municipalities may, within constitutional limits, levy and collect taxes annually sufficient to pay the interest and principal on bonds issued after the approval of the Bond Code, closes with this significant sentence: "Nothing herein contained shall prevent any county or municipality from applying funds derived from other taxes, or from any other source to the payment of bonds, heretofore or hereafter issued, or interest thereon, or from establishing a sinking fund for the payment of principal of bonds heretofore issued."

Section 62 of the Municipal Code provides: "Any court having jurisdiction shall issue mandamus for the levy and collection and proper application of the tax required by section 60 hereof or for the setting aside and proper application of sinking fund payment as required by law upon proper proof of non-compliance with the provisions of law being furnished by any tax pay[er] or bond holder."

■■ We see nothing in the ordinance per se, calling the election, and the proposed pledging of the taxes, ad valorem and license, which would stamp the ordinance as being illegal or ultra vires, or as being inconsistent with any provisions of the municipal charter, or any law of the state. However, into this ordinance, and into the contract pledging the specified taxes, must be read the law imposed limitation that, if necessary, out of this revenue accruing from said taxes, the necessary and legitimate governmental expenses in operating the municipality must be first paid. The municipality must function, without funds to defray the opera-

tion of its governmental agencies, the municipality would be destroyed. The police power of the municipality cannot be abridged, nor its existence destroyed, which would result if all its entire revenue was consumed in the payment of bonded debts, and nothing left to defray operating expenses. 43 C.J. 211; 44 C. J. 73.

This precise question has heretofore received the attention of this Court in the case of White v. Mayor & Council of Decatur, 119 Ala. 476, 23 So. 999, where it was observed in an opinion by McClellan, J. (page 1000): "It is thoroughly well settled law that where the interest and principal of a municipal bonded debt is payable out of the general revenues of the town, no part of such revenues that is necessary to meet current, legitimate municipal expenses can be subjected to the payment thereof, but only the surplus of income after the governmental expenditures have been met or provided for can by any process of law be applied to such debt. Dill. Mun.Corp. §§ 100, 101; Underhill v. Calhoun, 63 Ala. 216; Williamsport v. Commonwealth, 90 Pa. 498; East St. Louis v. United States, 110 U.S. 321, 4 S.Ct. 21 [28 L.Ed. 162]; State ex rel. v. Kansas City, 58 Mo.App. 124 [125]; Commonwealth v. Philadelphia County Commissioners, 1 Whart. 1. Nor can it make any difference that the bonded debt is specially charged upon the general revenues or that the corporate authorities are specially required to set apart a sufficiency of such revenues to meet such debt."

Likewise, should the license taxes now imposed prove inadequate to pay the operating expenses of the city and take care of the interest and principal of the bonded debt, for the payment of which such taxes may be pledged, no doubt the Board of Commissioners would increase the license tax schedule, within reasonable limitations as prescribed by law, so that such demands might be met and discharged. Should the proper municipal authorities refuse to do so, the courts would be open to require such officials to take such action.

It, therefore, follows that there is no error in the decree of the circuit court, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER, THOMAS, and BOULDIN, JJ., concur.