(29 Misc. Rep. 174.)

## In re ARMORY BOARD.

(Supreme Court, Special Term, New York County. October, 1899.)

1. WILLS—AUTHORITY OF TRUSTEES—LEASE—CONDEMNATION—DAMAGES.

Trustees under a will, who are authorized to rent deceased's property, and pay one-third of the proceeds to testator's wife during her life, and the balance to his children,—the will also providing that, if the wife should die before the children reach the age of 21 years, the trust is to continue until such time when the estate shall vest absolutely in them, and, in case the children reached the age of 21 years before the death of the wife, then on her death the estate shall vest in the children absolutely,—have no authority to lease the property for a period to continue beyond the term of their trust.

2. EMINENT DOMAIN—DAMAGES.

In condemnation proceedings, in assessing damages for depriving a lessee, under a long-time lease from the trustees, of his possession, his damages are to be measured by the value of the lease, subject to the contingency of its termination by the termination of the trust.

3. WILLS—POWER TO SELL—OPTION—DISCRETION OF TRUSTEE.

Executors empowered by a will, in their discretion, to sell and convey testator's real estate, have no authority to give an option for the purchase of a specified tract at a fixed price, to be exercised by the donee at any time within the term of a 21-year lease, in which the option is contained, as it prevents the exercise of their discretion, at the time they are called on to execute the power of sale, in light of conditions then existing.

Application by the armory board, in the city of New York, to acquire title, in the name of the city, to certain real estate belonging to the estate of Joseph W. Drexel, deceased. Lucy W. Drexel, as trustee, and George W. Tubbs, a lessee of the premises, objected to the apportionment of the appraisal made by the commissioners. Apportionment set aside, and rehearing ordered.

Charles N. Harris, for petitioner, armory board.

Arnold & Greene, for respondent Lucy W. Drexel, trustee, etc.

Gratz Nathan, for respondent George W. Tubbs.

Frank W. Arnold, guardian ad litem for Josephine W. Drexel.

BEEKMAN, J. In this proceeding, which was instituted under the condemnation law (Code Civ. Proc. § 3357 et seq.), commissioners were duly appointed, and, having made their report, this motion has come on to be heard for the confirmation of the same. While no question is raised with respect to the fairness and sufficiency of the amount at which the commissioners have appraised the property as a whole, a dispute has arisen between the owners and their lessee concerning the justice of the valuation of their respective interests in the property, and the apportionment which has been made of the appraised value between them. The appraisal amounts to the sum of $108,500, of which $84,159 is awarded to Lucy W. Drexel, as sole acting trustee under the last will and testament of Joseph W. Drexel, deceased; and the balance of said fund, namely, the sum of $24,341, is awarded to George W. Tubbs, as lessee of the premises under a lease made by the trustees of Joseph W. Drexel. The lease in question bears date the 31st day of December, 1894,

and was made between Lucy W. Drexel and William J. Arkell, as executors and trustees under the last will and testament, and codicil thereto, of Joseph W. Drexel, deceased, on the one part, and George Waite Tubbs, on the other part. It demises the property in question to Mr. Tubbs for a term of 21 years from the above-mentioned date, for an annual rental of $2,625, payable in half-yearly payments. The lessee also agrees to pay all taxes and assessments to which the property may become subject during the term demised. It is further provided that upon the last day of the term, or other sooner determination of the leasehold estate, the lessee will surrender the premises to the landlord, together with any buildings or structures thereon, which are to revert and belong to the lessors. It may be said, in passing, that the lease contains no agreement whatsoever on the part of the tenant to erect any improvements upon the property. The lease also contains this somewhat unique provision, which I quote:

"And it is further agreed that the parties of the first part, their successors or assigns, will, while this lease remains in force, sell, grant, and convey unto the said party of the second part, his executors, administrators, or assigns, or to such other person or persons as he or they may designate in writing, the premises above mentioned and described, for the sum of one hundred and five thousand ($105.000) dollars, or one or more of said lots, having a frontage equal to one-seventh of the entire frontage, at the rate of $15,000 for each lot."

This is distinctly characterized in the lease as an option to purchase conferred upon the lessee, for it is stated that:

"If the party of the second part, his executors, administrators, or assigns, shall not exercise the option hereby given to him or them to purchase the premises as above described during the said term, or sooner determination of the estate hereby demised, then such option shall become and be null and void."

If the option be exercised, then the lessee is permitted to pay for the property in cash, or by giving a bond and purchase-money mortgage to the lessors for the amount of the purchase money, with interest at the rate of 4 per cent. per annum, payable semiannually, payable in 5 years, but with the privilege of paying the same at any earlier time, on giving 30 days' previous notice in writing to the mortgagees. In addition to the above provisions, the lease contains the usual covenants in such cases, and some other provisions, which are mere matters of detail, unnecessary to be stated here.

The lessee seems to have entered into possession of the property at the time of the execution of the lease, and has, so far, complied with his obligations under it. No improvements have been erected upon the lots, which are vacant, nor has the option to purchase been exercised. A large amount of testimony has been taken on both sides upon the question of the value of this leasehold estate, which has resulted in the usual irreconcilable opinions of real-estate experts; and it may be confessed that the true theory upon which such a valuation should proceed is a nice one, and somewhat difficult of determination. But the evidence was given, and the determination of the commissioners was based upon an assumption that the lease itself, and especially the option to purchase which it contains, was free from legal question. It was assumed that, so long

as the lessee performed his part of the contract, the term of 21 years which was demised was not subject to any abridgment, except as in the lease especially provided. It was also assumed that the option to purchase was one which the lessee could exercise at any time during the continuance of the lease, and much importance was attached to this fact. As these assumptions necessarily and most seriously affected the determination of the commissioners, it becomes important to consider whether they were well founded. The lessors, as trustees, derived whatever power they had to make the lease from the will of Joseph W. Drexel, who died in the month of April, 1888. The clause under which such authority was assumed to exist, briefly stated, contains the following provisions: The testator devises to his executors all of his real estate, except such as is situated in the state of Pennsylvania (thus including the premises in question), in trust "to rent the same, and to receive the rents, issues, and profits thereof," and after deducting expenses, repairs, taxes, and assessments, to pay his wife, during her natural life, one-third part of the income. The remaining two-thirds of the net income is appropriated for the benefit of testator's children during the continuance of the trust estate thus limited upon the life of his wife, under certain directions with respect thereto to which it is unnecessary to refer. In case of the death of his wife before one or more of the children had attained the age of 21 years, it is provided that, in addition to their own shares, each child shall receive an equal part of the income (one-third) which had been given to her to be accumulated during such child's minority. Upon the death of the wife, should that event happen after all of the testator's children should have attained the age of 21 years, the testator devises his real estate to his children and the child or children of any deceased child, share and share alike, free and discharged from the trust, per stirpes and not per capita. There is an alternative provision in the event of the death of the wife before any of the children attained the age of 21 years, under which the real estate is devised to testator's children in equal shares, as tenants in common, in fee simple. In case, however, of the death of the wife, leaving one or more of testator's children, her surviving, a minor or minors, and another or others of full age, the testator directs that the trust which he had created shall continue until the youngest of said minor children, if there be more than one, or, if there be but one, then until such minor child attains the age of 21 years, or dies under that age, at which time the trust is to cease, and the real estate is to vest in testator's children and the children of any deceased child in equal shares, per stirpes and not per capita. Immediately following the above limitations is this provision:

"But the devise mentioned in this, the third section or paragraph of my last will and testament, I expressly make subject to the execution by my executors of a power hereby delegated to them to sell and convey any or all of the said real estate; and, to the end that such power may be duly exercised, I hereby authorize and empower my executors, in their discretion, to sell and convey the said real estate, or any part thereof, to such person or persons as they may deem proper, and at such prices as may appear just and reasonable, and to give good and sufficient deeds to vest title to the same, or any part thereof,

in a purchaser; and such purchaser is hereby exonerated from looking in any way to the application of the purchase money paid as consideration for the sale of said real estate, or any part thereof; and, if this power of sale shall be exercised, the proceeds of such sale or sales as may be made shall be invested by my executors in good income-paying securities, and the income therefrom shall be distributed, and upon the termination of this trust the principal of such securities shall be disposed of in the same manner as if such sale had not been made."

It will be observed that there is no power expressed in the will which specifically authorizes the trustees to lease the real estate for any specified period. It is true that at the outset, in expressing the terms of the trust estate which the testator created, he directed his executors, as trustees, to rent the trust property, and to receive the rents, issues, and profits thereof; but he says nothing with respect to the term for which leases may be made, nor is there any other direction given in any way affecting the powers of the trustees in thus dealing with the property. In fact, the provision in this regard amounts to nothing more than is necessarily to be implied in the creation of a trust to receive rents and profits. The duty of receiving rents and profits imports a power to do that which is necessary in order that rents may be realized. In the absence, then, of any specific provision in the will authorizing such a lease as this to be made, the question arises whether the estate and interest of the trustees in the subject-matter of the trust were such that it can be said, as a matter of law, that the lease in question was one which it was competent for them to make. It will, of course, be observed that the lease, by its terms, is to continue for a period of 21 years, unless sooner terminated by the exercise of the option to purchase. It may well be, therefore, that the trusts created under the will will have expired long before the end of the term demised. The trend of judicial opinion seems to establish the doctrine that in the absence of authority so to do, conferred by the instrument constituting the trust, a trustee of such a trust as this has no power to lease real estate for a longer period than the actual duration of the trust estate. In re McCaffrey, 50 Hun, 371, 3 N. Y. Supp. 96; Gomez v. Gomez, 81 Hun, 566, 31 N. Y. Supp. 206, affirmed in 147 N. Y. 195, 41 N. E. 420. In the Case of McCaffrey, supra, one Perry executed to one Shoudy a deed of a lot of land in trust to receive the rents and profits, and to pay the same to Harriet Perry for her natural life. On the death of the latter the land was to be sold or partitioned. One third was to be vested in her daughter Annie, her heirs and assigns; another third was to be vested in said trustee in trust to apply the income to the use of her daughter Helen until she became 21, when the principal was to vest in her in fee; and the remaining third was to vest in the said trustee in trust to apply the income to the use of her daughter Mary during her natural life, and upon her death the principal was to go in fee to the descendants of the latter living at that time. It was further provided that, if any of said daughters should die without lawful descendants, the share of the person so dying should go to the other two, or the survivor of them, except that any share which would otherwise

go to the daughter Mary should go to said trustee for her bene-
fit. Before the death of Harriet Perry the trustee made a lease
of the land for a period of five years, with the privilege to the ten-
ant of a renewal for five years more. The first term of five years
having expired, the trustee accordingly executed a renewal of ·the
same for a period of five years. A little more than a year after-
wards, Harriet Perry, the cestui que trust, died. The question
presented by the case cited was whether the lease last made was a
valid one, and it was held that upon the termination of the trust
the lease terminated with it, upon the ground that the trustee
could not lease for a period transcending the limits of the duration
of his estate. The case of Newcomb v. Ketteltas, 19 Barb. 608, and
Greason v. Keteltas, 17 N. Y. 491, were both considered by the
court, and, for the reasons there given, were held to be inapplica-
ble to trusts, under the Revised Statutes, of the nature of that un-
der consideration. The same question was under discussion by
the court in the case of Gomez v. Gomez, supra, which was decided
in ·this department. The McCaffrey Case is cited with approval
by Mr. Justice Parker. In his opinion (page 570, 81 Hun, and page
208, 31 N. Y. Supp.) he says:

"In Re McCaffrey, 50 Hun, 371, 3 N. Y. Supp. 96, in which it was held that,
unless expressly authorized by the trust deed, a trustee is without power to
make leases extending beyond the trust term, and, if he attempts it, the
lease is invalidated by the death of the beneficiary, the Keteltas Cases, supra,
are considered, and the reason given why they should not be held to be in
conflict with the doctrine of that case. The consideration which they receive
meets with our approval, and therefore justifies the omission of their further
discussion."

It appears that the lease in the Gomez Case was one which had
been made by the trustees pursuant to some authority to that end
conferred in a proceeding in chancery to which all the persons in
interest had been made parties; and it was considered by all of the
justices taking part in the decision of the case, except Presiding
Justice Van Brunt, that in any event the order made by the court
of chancery precluded the question of the validity of the lease
from being raised. The opinion of the presiding justice is placed
simply upon the ground that the trustee had no power to make
the lease complained of. Upon an appeal to the court of appeals
the judgment below was affirmed (Gomez v. Gomez, 147 N. Y. 195.
41 N. E. 420), the court there holding unanimously that the proceed-
ings in chancery were conclusive upon the· questions involved. At
the same time Judge Haight, giving the opinion of the court (page
200, 147 N. Y., and page 422, 41 N. E.), states as follows:

"The trust created by the deed, being for the life of Mrs. Gomez, terminated
with her death; and with her death the powers of the trustees were, as we
have seen, at an end, except to turn over and convey the trust property as
directed by the deed. They therefore had no power under the deed to there-
after renew leases, or in the leases executed by them to provide for the renewal
of leases after her decease."

And in support of this proposition he quotes the McCaffrey Case.
It may be said that the Gomez Case is not authoritative upon
the question under discussion, in view of the position taken by the

court, that the order of the court of chancery was decisive of the question in that case. Conceding this, the case is still valuable for the opinions expressed by the judges upon the question, and the approval of the McCaffrey Case which seems to have been given.

The generally accepted theory seems to be that the estate of a trustee to receive rents and profits, and to pay or apply the same to the use of another for life, is in the nature of an estate for life, subject to the restrictions with respect to alienation prescribed by statute, and that the trustee has no power, in the absence of special provisions contained in the instrument creating the estate, to incumber the interests of those to whom the corpus of the trust has been devised in remainder. Chaplin, Exp. Trusts, 343, 344; Losey v. Stanley, 147 N. Y. 560, 42 N. E. 8. In the case last cited, Andrews, C. J., referring to the trust there under consideration, says (page 567, 147 N. Y., and page 10, 42 N. E.):

"The estate of the trustee was for the life of James W. Stanley, and terminable at his death. The will created two distinct legal estates in the devised property, viz. an estate in the trustee for the life of the beneficiary, with the right of possession and to receive the rents and profits during the continuance of the trust, and an estate in remainder, which became vested on the birth of children, as before stated. The trustee had no power over the estate in remainder, except such as may have been given him by the will. He could not sell or incumber it, or in any way by his own act alter or affect the interests of the remainder-men, unless authorized by the will. The provision of the statute of uses and trusts (1 Rev. St. p. 729, § 60) declaring that every valid express trust shall vest the whole estate in the trustees is by settled construction limited to the trust estate, and has no application to future legal estates in lands covered by the trust, to take effect in possession on the termination of the trust. The trustee in the present case had an estate for the life of James W. Stanley, and it was this estate, and this only, which vested in the trustee." Stevenson v. Lesley, 70 N. Y. 512.

The estate of the trustee of such a trust being of this quality, the rule which limits the power of one holding a legal estate for life to a demise which must terminate with the termination of the life estate logically applies. It may be mentioned in passing, although it does not seem to affect the conclusion to which I have come, that under the real property law (Laws 1896, c. 547, § 86) the court, upon suitable application, has authority to sanction a lease by a trustee for a term exceeding five years, and to confirm any such lease made before the statute took effect. The lease in question was made before either the real property law, or the act of 1895, which preceded it, became a law. Whether the law is unconstitutional, as has been suggested (Chaplin, Exp. Trusts, 346), in so far as it authorizes the sanction of such an incumbrance of the vested interests of those entitled to the property in remainder, I deem it unnecessary to discuss here. It is sufficient to say that no application to the court for the confirmation of this lease has ever been made.

From what has been said, it seems to follow that the lease in question is subject to defeat by the termination of the trust estates before the expiration of the term demised. This is a contingency which may occur at any time, and, of course, most seriously affects the value of the leasehold estate.

We now come to the consideration of the option to purchase the property which the lease assumes to confer upon the lessee. I have no doubt of the invalidity of this provision. It is true that the will vests in the trustees a discretionary power of sale, but this is a power which is to be exercised when, in the judgment of the trustees, the best interests of the estate warrant it; and such judgment must be based upon conditions, including values, existing at the time when the power is to be exercised. But in the case before us no such judgment or discretion is possible. The trustees have undertaken to bargain it away, and whether the property should be sold or not, when the demand for a conveyance under the option is made, and at what price, other than the minimum fixed in the option, is made to depend entirely upon the judgment and volition of the lessee; and this is to be the condition of things for a period of 20 years. The lessee at any time during that period may call upon the trustees to convey the land to him for the sum mentioned in the option, and, according to the lease, they would be bound to give him a conveyance upon receipt of that sum, although the property may then be worth twice the amount. It will be observed that even now, according to the appraisal of the commissioners, the land is worth more than the consideration money specified in the option. In no respect can this option be regarded as a contract to sell on the part of the trustees, or as an execution of the power. At best, it is merely an agreement that they will exercise the power whenever during the term of 21 years they may be requested so to do by the lessee. It is manifest that there is no authority conferred upon them by the will to make such a bargain as this,—involving, as it does, a necessary disregard of the obligations resting upon the trustees before executing the power of sale to exercise a wise discretion in the matter, based upon their untrammeled judgment at the time, as to what the best interests of the beneficiaries under the will may require in the light of conditions then existing. The option is, in my opinion, void and unenforceable, and, in valuing the contract, should have been disregarded. The interest of the lessee, which the commissioners were called upon to value, is that which is measured by the lease (without the option) for the term therein mentioned, subject to the contingency of the termination of the trust before the expiration of such term, when the lease also will terminate.

I am satisfied that, in this view of the lessee's interest, the award made to him was based upon an erroneous principle, and was far in excess of the actual value of his estate. The report must therefore be set aside, and a rehearing ordered, either before the same commissioners, or others to be appointed, as it may be determined upon the settlement of the order. Ordered accordingly.