288 So.2d 122

The CITY OF TUSKEGEE, a municipal corporation, et al.

v.

Andrew V. SHARPE.

SC 47.

Supreme Court of Alabama.

June 28, 1973.

Rehearing Denied Jan. 24, 1974.

Gray, Seay & Langford, Tuskegee, for appellants.

Russell, Raymon & Russell, Tuskegee, for appellee.

COLEMAN, Justice.

Respondents appeal from decree for complainant in suit to compel specific performance of a contract granting complainant an option to purchase land.

Complainant is a natural person. Respondents are the City of Tuskegee which is a municipal corporation in Macon County, the mayor of the city, and five persons who are the duly elected members of the city council.

Complainant alleges that the city is the owner of certain land in Macon County comprising 659.67 acres, more or less; and that on September 22, 1964, the city council entered an ordinance on its minutes that the land was not needed for public or municipal purposes and granted to complainant an option to purchase the land for a period of years. The option recites in substance as follows:

That at a regular meeting of the council on September 22, 1964, the council duly entered an ordinance on its minutes that the

land was not needed for public or municipal purposes; that the mayor, under § 477(1), Title 37, Code of 1940, as amended, was directed to execute said option to complainant; and that the city, acting through its mayor, and complainant agree as follows:

1. that complainant shall have an option for the purchase of the land for three years from this date for the amount per acre herein specified; and the price shall be $125.00 per acre;

2. that complainant will pay to the city $1.00 per acre for the privilege of this option; and, in the event the option is not exercised by complainant within three years, the option shall be null and void unless renewed as herein provided; but, should the option be exercised within three years, then the amount paid for the option shall be credited on the purchase price, "and an additional credit of One Thousand Eight Hundred Dollars ($1,800) on the purchase price of the entire tract for the damage done to the said property by the cutting of timber by Atomedics, Inc.";

3. that should complainant desire to extend the option, it may be extended for an additional period of two years provided payment is made to the city of an additional sum of $1.00 per acre for such extension, and said payment shall be made not less than thirty days prior to the expiration of the three-year period of time herein specified;

4. that, should the option be extended for an additional period of two years, all provisions of the option for the original period of three years shall be incorporated into and be the same terms and conditions applicable to the two-year extension of the option.

The date of the option is October 1, 1964. It was signed and acknowledged by the mayor, the city clerk, and complainant.

Complainant avers that on September 30, 1964, he paid $659.67 to the city for the option; that he renewed the option for an additional period of two years by paying to the city $659.67 on August 23, 1967, which was accepted by the city.

Complainant avers that on April 10, 1969, he notified the mayor and council that he was exercising the option to purchase the land for $125.00 per acre, subject to the credits in the option; that on July 9, 1969, a communication was received from attorneys for the mayor and council in which they refused to comply with the terms of the option; and that subsequent letters were received advising complainant that the council was of opinion that the option was not binding, and, therefore they were refusing to convey the land to complainant.

Complainant avers that in the communication from attorneys for respondents dated July 9, 1969, a check for $1,573.33 was mailed with the letter as a refund of the option payments made by complainant, with interest thereon, but said check was returned to the attorneys for respondents and was not accepted by complainant.

Complainant offers to pay the price as specified in the option and prays that the court will require respondents to deliver to him a deed conveying the land, and for general relief.

Respondents' demurrer to the bill was overruled.

Respondents filed answer and cross bill averring that the option was not valid and binding for reasons hereinafter discussed. In their cross bill respondents pray that the court declare that the action taken by the council in attempting to grant the option is null and void, that the option is null and void, and that complainant has no interest in the land.

On the hearing, certain facts were stipulated. As we understand the stipulation, it is agreed that the averments of the bill are true in so far as they recite that the city council did enter or undertake to enter the alleged ordinance authorizing the mayor to execute the option, that the mayor did sign the option, that complainant did make the payments of money and did undertake to exercise the option as alleged,

that respondents did refuse to convey the land to complainant and did send the refund check to complainant and he refused to accept the refund.

It is further stipulated as follows:

on September 22, 1964, when the council adopted or undertook to adopt the ordinance authorizing the granting of the option, Rutherford was mayor, and Braswell, Gregg, Lumpkins, Sides, and Thompson were councilmen; and their terms of office expired thirteen days later on October 5, 1964;

on October 5, 1964, the following took office: Keever, as mayor, and Gregg, Parker, Smith, Sides, and Buford as councilmen; and their terms expired October 7, 1968;

on October 7, 1968, the respondents took office, namely: Keever, as mayor; and Toland, Gregg, Bentley, Bulls, and Peterson, as councilmen, with terms expiring October 2, 1972.

Other facts are stipulated. On the hearing testimony was heard ore tenus. As may be appropriate other facts will be hereinafter mentioned.

The trial court rendered decree granting the relief prayed for in the bill and ordered respondents to execute a deed to complainant in accord with the terms of the option. Respondents assert that the decree is erroneous for the reasons next considered.

Respondents argue that the powers of a municipality are only the powers conferred on the city by statute, that no statute of this state gives a city the power to grant an option giving to another the right to purchase at his election real estate owned by the city as in the instant case, and, therefore, that the attempted execution of the option contract was beyond the power of the city and the option is void.

In an action against a city on a promissory note executed by the city, this court affirmed a judgment for the city. The judgment was based on a verdict returned after the trial court had given the general affirmative charge for defendant. Among other things, this court said:

" 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.' New Decatur v. Berry, 90 Ala. 432, 7 So. 838, 24 Am.St.Rep. 827; 1 Dillon on Mun.Corp. § 89; Smith v. Newbern, 70 N.C. 14, 16 Am.Rep. 766; Cook County v. McCrea, 93 Ill. 236; Wetumpka v. Wetumpka Wharf Co., 63 Ala. 611; Eufaula v. McNab, 67 Ala. 590, 42 Am.Rep. 118. City of Mobile v. Electric Street R. R., [141] (Ala.) [442,] 38 So. 127. The city of Greenville had no authority to execute the note sued on or to make the debt, which it evidences, a legal charge against the general fund of the municipality. No such authority was given the municipality by its charter. Acts 1870–71, p. 121. Nor by section 2950 of the Code of 1896 and Acts 1886–87, pp. 629, 1009. Police Jury v. Britton, 15 Wall (U.S.) 556, 21 L.Ed. 251; Blackman v. Lehman, Durr & Co., 63 Ala. [547,] 550, 35 Am.Rep. 57; Garland v. Board of Revenue, 87 Ala. 223, 6 So. 402; Woolf v. Taylor, 98 Ala. [254,] 257, 13 So. 688; Webb v. City of Demopolis, 95 Ala. [116,] 131, 13 So. 289, 21 L.R.A. 62.

". . . . . . . .

"This court has always strongly maintained the doctrine, both as to private and municipal corporations, that contracts made by or with them, outside the pale of their corporate authority, confer no right, and that neither the making of an ultra vires contract nor the receiving of its benefits estops the corporation from setting up its invalidity. Chewacla Lime Works v. Dismukes, 87 Ala. 344, 6 So. 122, 5 L.R.A. 100; Sherwood v. Alvis, 83 Ala. 115, 3 So. 307, 3 Am.St.Rep. 695,

and authorities there cited; New Decatur v. Berry, 90 Ala. 432, 7 So. 838, 24 Am. St.Rep. 827. . . ." Cleveland School Furniture Co. v. City of Greenville, 146 Ala. 559, 562, 563, 564, 41 So. 862, 863, 864.

The last mentioned case was cited with approval in Johnson v. City of Sheffield, 236 Ala. 411, 183 So. 265, and also in City of Bessemer v. Huey, 247 Ala. 12, 22 So.2d 325, decided in 1945.

In *Huey* this court affirmed a decree overruling demurrer to a bill to nullify a lease of city property. After considering the statutes then in effect, which provided that the city council " ' . . . shall have the management and control of . . . all of the property, real and personal, belonging to the city . . .,' " this court said "It is clear from the foregoing that there is no express authority given to a city to sell or lease its real property," citing and quoting, the *Cleveland School* case, supra. A statute subsequently enacted in 1953 purports to grant to a city power to sell and lease its real property. See: Act No. 843, 1953 Acts, Vol. II, page 1135, approved September 19, 1953; 1958 Recompilation of Code 1940, Pocket Parts, Title 37, §§ 477(1), 477(2).

The Court of Appeals has said:

"A town is a municipal corporation with limited territory and powers. It exists only under and within its charter, viz., statutes. Its subsidiary legislation and other assertions of authority are entirely dependent upon statutory predicates. In Alabama there is no general, inherent right of local self government, Yeilding v. State, 232 Ala. 292, 167 So. 580. And (unlike the rules in respect of private corporations and the Federal Government) in construing the grant of a power the rule of strict construction applies so that if there is reasonable doubt concerning the existence of the power the doubt should be resolved against the asserted power. Dillon, Municipal Corporations 2d Ed., Vol. 1, Section 55. Posey v. Town of North Bir-

mingham, 154 Ala. 511, 45 So. 663, 15 L.R.A.,N.S., 711, where operation of municipal light plant was held ultra vires. Colvin v. Ward, 189 Ala. 198, 66 So. 98." State v. Homan, 38 Ala.App. 642, 646, 92 So.2d 51, 54.

The complainant asserts that Act No. 843, supra, does grant to the city power to enter into a contract whereby an option to purchase real property owned by the city is granted to another.

The question for decision presented by the contentions thus stated is whether or not the statute does grant to a city the power to enter into a contract granting to another such an option.

This court, as to an option, has said that it " . . . ' . . . originally is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another, that he shall have the right to buy the property at a fixed price within a time certain. He does not sell his land; he does not then agree to sell it; but he does then sell something, viz.: the right or privilege to buy at the option or election of the other party. The second party gets *in praesenti* not lands, or an agreement that he shall have lands, but he does get something of value, that is the right to call for and receive lands if he elects. The owner parts with his right to sell his lands (except to the second party) for a limited period. The second party receives this right, or rather from his point of view, he receives the right to elect to buy. * * * . . . ' . . .

"In 28 Am. & Eng.Ency.Law (1st Ed.), 77, it is said: 'The right to purchase land is frequently the subject of contract, and such right may be styled an option. It is not an estate in land and an option is not a contract of sale. . . .' " Fulenwider v. Rowan, 136 Ala. 287, 303, 304, 34 So. 975, 979.

Fulenwider v. Rowan, supra, has been cited and quoted by this court in Bethea v. McCullough, 195 Ala. 480, 487, 70 So. 680; Lauderdale Power Co. v. Perry, 202 Ala. 394, 395, 80 So. 476; Cowin v. Salmon, 244

Ala. 285, 293, 13 So.2d 190, 196; and Neely v. Denton, 260 Ala. 26, 29, 68 So.2d 537.

The courts of Texas have considered the question whether a provision of the Texas Constitution authorized the granting of an option to purchase certain lands which were the property of the county. The commissioners' court of Potter County authorized the county judge to sign an option in behalf of the county. With respect to the power of the county to grant the option, the Court of Civil Appeals of Texas had this to say:

"It is the contention of the county that, under the powers granted to the commissioners' court 'to sell and dispose' of the county school land, an option given an optionee granting him the privilege of purchase for a stated period is void as being without authority or power and contravening public interest and against the public policy of the state. In this appellee appears to be sustained at least to the extent where the option would have the effect to be in restraint of the right of alienation vested in the county by the Constitution. Such an option would be nonenforceable, and would give no right or interest in and to school land. Midland County v. Slaughter, 61 Tex.Civ.App. 328, 130 S.W. 612; Delta County v. Blackburn, 100 Tex. 51, 93 S. W. 419; Tibbs v. Zirkle, 55 W.Va. 49, 46 S.E. 701, 104 Am.St.Rep. 977, 2 Ann. Cas. 421; Swift v. Erwin, 104 Ark. 459, 148 S.W. 267, Ann.Cas.1914C, 363. In re Armory Board, 29 Misc.Rep. 174, 60 N.Y.Supp. 882; Hickok v. Still, 168 Pa. 155, 31 Atl. 1100, 47 Am.St.Rep. 880; Navigation Co. v. Sutherberry, 16 Ch. Div. 236. In some of the cases cited the party granting the option stands in the relation of trustee with power to sell. The courts generally holding a power to sell would not authorize an option.

"We think the consensus of the various decisions upon the nature of an option is that it is an agreement to keep an offer open which prevents a sale for the time being. An option is not the use of the power to sell, but a surrender of it for the time, or which prevents for the time, the right of alienation. Perry v. Paschal, 103 Ga. 134, 29 S.E. 703; Benedict v. Pincus, 191 N.Y. 377, 84 N.E. 284; Patterson v. Farmington, etc., 76 Conn. 628, 57 Atl. [853] 854; Tibbs v. Zirkle, 55 W.Va. 49, 46 S.E. 701, 104 Am.St.Rep. 977, 2 Ann.Cas. 421; Swift v. Erwin, 104 Ark. 459, 148 S.W. 267, Ann.Cas.1914C, 363; Black v. Maddox, 104 Ga. 157, 30 S.E. [723] 732; Hickok v. Still, 168 Pa. 155, 31 Atl. 1100, 47 Am.St.Rep. 880; Starcher Bros. v. Duty, 61 W.Va. 373, 56 S.E. 524, 9 L.R.A. (N. S.) 913, 123 Am.St.Rep. 990; Woodall v. Bruen, 76 W.Va. 193, 85 S.E. 170. It is an offer, continuing offer, with the right of election or acceptance." C. C. Slaughter Cattle Co. v. Potter County, (Tex.Civ.App.), 235 S.W. 295, 306.

On subsequent appeal of the cause, the Commission of Appeals of Texas said:

"Article 7, § 6, of the Constitution of Texas, in part, follows:

"'All lands heretofore or hereafter granted to the several counties of this state for educational purposes, are of right the property of said counties respectively, to which they were granted, and title thereto is vested in said counties. * * * Each county may sell or dispose of its lands, in whole or in part, in manner to be provided by the commissioners' court of the county. * * * Said lands and the proceeds thereof, when sold, shall be held by said counties alone as a trust for the benefit of public schools therein. * * *'

"The counties are granted power by the Constitution 'to sell or dispose of its lands.' The county is trustee for the state. The schools are the institutions of the state established in the counties, and, as a part of the state's governmental policy, maintained in part from taxes and other funds directly furnished by the state, and in part from interest on the funds realized from the lands intrusted by the state to the management of the commissioners' courts of the counties as instrumentalities in executing said

policy. The counties are thus trustees for the benefit of the state schools. Webb County v. School Trustees, 95 Tex. 131, 139, 65 S.W. 878; Delta County v. Blackburn, 100 Tex. 51, 58, 93 S.W. 419. As such trustees their powers must be strictly construed. They may neither divest themselves of the powers conferred nor assume powers not conferred. Commissioners' courts shall 'exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the state or as may be hereafter prescribed.' Article 5, section 18, Constitution of Texas, Mills County v. Lampasas County, 90 Tex. 603, 40 S.W. 403; Bland v. Orr, 90 Tex. 492, 39 S.W. 558; Baldwin v. Travis County, 39 Tex.Civ.App. 431, 88 S. W. 484. Neither the Constitution nor the statutes of Texas confers power upon the counties to do more than 'sell or dispose of its lands.' *The county's power 'to sell or dispose of its lands' does not include the power to make a contract conferring upon the other party an exclusive right to purchase its lands at any future time.* The option agreement with Ferrell was totally beyond the power of the county to make. No law prohibits such a contract; no statute attaches a penalty to the making of such a contract. It was neither malum prohibitum nor malum in se. No law prohibits it; it was not evil in itself; it was simply beyond the power of the county to make and, therefore, was void. It was a mere scrap of paper. Independent of any question of public policy, it never existed as a contract. There was never any power to execute it—to give it vitality. Its life and vitality are not thwarted and choked out by public policy because it never had life and vitality. It cannot be that an agreement void for want of power in the parties to create any obligation by virtue of such agreement is void because contrary to public policy. Since it was void from its incipiency, it never had a binding effect independent of law or public policy; it could not have a tendency to be injurious to the public good; it had no tendency toward anything. It was impotent. It was

as if no writing had ever been made. It did not conflict with the public good. It was nothing. Such an agreement is no contract whatever, and the acts of the parties in an effort to create one in nowise brings about a change in their legal status or in that of the subject-matter. It cre*ats* no ri*g*hts; it imposes no duties; it entails no obligations. The parties and the subject-matter of the agreement remain in all respects just as they were before any act was performed in relation thereto. When the writing purporting to give an option was made, both parties knew, and they are held to have known, that it created no change in their relation to each other and none in their respective rights and relations to the county school land of Potter county." (Emphasis Supplied) Potter County v. C. C. Slaughter Cattle Co., (Tex.Com.App.), 254 S.W. 775, 777, 778.

In Whitworth College v. City of Brookhaven, D. C., 161 F.Supp. 775, plaintiff brought an action for specific performance of an option contract contained in a twenty-year lease of real estate executed by the defendant city. The contract provided that during the life of the instrument, the plaintiff shall have the right to purchase the leased property at a stipulated price. The city was authorized to deal with the property by a special act of the legislature. The act provided that the mayor and board of aldermen of the city " ' . . . are hereby authorized and empowered, in their discretion, to lease or sell . . . ' " the property. The court said:

" . . . The only power the Mayor and Board of Aldermen had was to lease the property or sell the property, and there is no part of the Act from which it could be implied that the Mayor and Board of Aldermen in power for a period of four years could bind future governing bodies of the City in the exercise of a sound discretion for the benefit of the City. It is a well settled principle of law that the powers of a municipality are only those which are granted to it by the Acts of the Legislature. Every person who deals or contracts with a munic-

ipality is charged with knowledge of this law and of the limitations that are placed by law upon the authority of the governing body of a municipality. . . ." (161 F.Supp. at 781)

In *Whitworth College*, the plaintiff contended further that the contract was valid under Section 2391 of Mississippi Code of 1930, which enumerated among the powers of a municipality one as follows:

" 'To sell and convey any real and personal estate owned by it, and make such orders respecting the same as may be deemed conducive to the interest of the municipality, and to exercise jurisdiction over the same.' " (161 F.Supp. at 783)

The plaintiff contended that under the code section, as well as the special Act, when the Mayor and Board of Aldermen had invited Mr. Daniel, president of the plaintiff corporation, to come to Brookhaven and he had entered into a written contract obligating him to operate a school in Brookhaven and to perform other obligations under the contract, it was based on a valuable consideration and was binding on the city. The court said:

" . . . However, this contention cannot be sustained for the reason that as hereinbefore shown, one who deals with a municipality is charged with all of the limitations upon its powers that are announced in the law. It necessarily follows that when he entered into this contract, as a matter of law there was written into the contract the laws of Mississippi governing municipalities. A contract between a municipality and another person is different from a contract entered into between private individuals. Under all the authorities hereinbefore cited, it is clear that the contract of February 4, 1941 was ultra vires and void." (161 F.Supp. at 783)

In Adler v. Adler, 216 Ga. 553, 118 S.E. 2d 456, the Supreme Court of Georgia held invalid an option to purchase which had been granted to the lessee in a lease executed by executor-trustees acting under authority of a will. The executor-trustees were empowered and directed to invest, reinvest, sell, lease, or transfer any of the property of the estate upon such terms as to them seemed best without any order of any court and without reporting to any court. No reference whatsoever was made in the will as to any power being conferred upon the executor-trustees to grant an option to purchase the property. The court said:

" . . . It has long been the rule, both in America and in England, until changed by statute in England (Law of Property Act, 15 Geo.V, c. 20 § 28, 1925), that 'the trustee who has a power to sell in addition to a power to lease, whether the latter is express or implied, does not ordinarily have the power to give a lessee an option of purchase for a definite sum during the term of the lease. The purpose of this rule is to compel the trustee to exercise his judgment at the time of the sale and not at the time of the making of the lease as to whether the sale is beneficial to the trust estate.' 4 Bogart On Trusts and Trustees, § 796: 21 Am. Jur. Executors and Administrators, 722, § 696; 2 Scott On Trusts, 1439, § 190.8; 7 Thompson On Real Property, 348, § 3892; 30 Co.Law Rev. 870; Clay v. Rufford, 5 De G. & Sm. 768, 780, 64 Eng.Rep. 1337, 1342 (1852); Oceanic Steam Navigation Co. v. Sutherberry, L.R. 16 Ch.Div. 236, 243 (1800); In re Armory Board, 29 Misc. 174, 60 N.Y.S. 882; Hickok v. Still, 168 Pa. 155, 31 A. 1100; Moore v. Trainer, 252 Pa. 367, 97 A. 462; Midland County v. Slaughter, 61 Tex.Civ.App. 328, 130 S.W. 612; Cozad v. Johnson, 171 N.C. 637, 643, 89 S.E. 37, 40; Swift v. Erwin, 104 Ark. 459, 148 S.W. 267, 269; Tibbs v. Zirkle, 55 W. Va. 49, 46 S.E. 701, 104 Am.St.Rep. 977; Trogden v. Williams, 144 N.C. 192, 194, 56 S.E. 865; Hedgecock v. Tate, 168 N. C. 660, 85 S.E. 34." (216 Ga. at 555, 556, 118 S.E.2d at 458).

The court quoted from Moore v. Trainer, 252 Pa. 367, 97 A. 462, as follows:

" . . . 'An executor or other trustee acts in a representative capacity and

for the benefit of the cestui que trust. Persons dealing with him are bound to know the extent of his powers and, in absence of ratification by the cestui que trust the latter is not bound by the executor's acts in excess of his authority . . . This rule is necessary for the protection of the cestui que trust against unlawful acts of the trustee. When such acts are committed, the relation between the third persons and the cestui que trust is not that of two persons contracting with each other but of one person dealing with another who has limited power to act for a third person, and of the extent of which power such third person has knowledge . . . Giving the option without requiring the other party [to the lease] to purchase was not an exercise of the power [under the will] to sell, but a surrender of it for the period of the lease, and therefore the option was invalid. The executor was bound to sell for the price stated, without exercise of discretion at the time of the sale, and regardless of the question of possible increase in the value of the property between the beginning and expiration of the lease.' And this is stated to be the rule in American Law Institute's Restatement of the Law of Trusts (2nd Ed.), p. 422, § 190(k) 'whether the purchase price is fixed at the time of the giving of the option or is to be fixed by appraisal at the time of the exercise of the option.' And the reason there stated is 'that, when a power of sale is conferred it is usually contemplated that the trustee exercise discretion at the time of sale and not at some prior time.'" (216 Ga. at 557, 118 S.E.2d 458–459.)

As stated above, complainant relies on Act No. 843, supra, which, as here pertinent recites:

## "AN ACT

"Relating to the powers of municipalities: to authorize the governing body of any city or town to alienate municipal property which is not needed for public or municipal purposes.

*Be It Enacted by the Legislature of Alabama:*

"Section 1. The governing body of any city or town in this state may, by ordinance to be entered on its minutes, direct the disposal of any real property, not needed for public or municipal purposes, and direct the mayor to make title thereto; and a conveyance made by the mayor in accordance with such ordinance invests the grantee with the title of the municipality."

Complainant contends that the phrase, "direct the disposal of any real property" as used in the act includes the power to grant an option by a municipality. In support of this contention, complainant cites the cases next discussed.

In Interstate Materials Corp. v. City of Houston (Tex.Civ.App.), 236 S.W.2d 653, plaintiff brought action for specific performance of a contract under which the city agreed to lease certain property to plaintiff and in which plaintiff was given the option to purchase the property at the end of the four-year term provided lessee shall have complied with all terms of the lease and paid the rent provided for. Plaintiff was to pay to the city the additional sum of $8,100.00, and the city was to execute a deed conveying the property to plaintiff. Plaintiff paid the rent, complied with the terms of the lease, and elected to exercise the option to purchase. The city sought to avoid the contract to convey on the ground that the charter of the city had not been complied with. The charter provided that in all sales in which the price is in excess of $5,000.00, the property shall be first appraised by two appraisers appointed by the council, and the report of the appraisers shall be filed with the council. It appears that there was testimony and record evidence showing that two appraisers had been appointed and had filed their report, but " . . . no record was ever

found showing the formal appointment of these men by the Council to appraise the property."

The court held that the absence of the formal appointment of the appraisers was an irregularity, and the contract was not void on account of the irregularity and granted specific performance. The court quoted from a prior Texas case as follows:

" 'Municipal contracts which are not void, but defectively executed by some officer or body or board, which had no authority to act because the power to make the contract resided in some other officer, or because the authority to act had not been expressly conferred upon such officer or body by ordinance, are such as may be ratified by the acts and conduct of the governing body of such municipality. Its agreement may be manifested by its acts and conduct.' " (236 S.W.2d at 655)

The opinion does not consider the question whether the city had power to grant an option to purchase. The only contention by the city was that the power to sell was irregularly exercised, and not that there was an absence of such power. The court considered also certain matters relating to an assignment of the contract which are not pertinent here.

In Borough of East Rutherford v. Sterling Paper Converting Co., 21 N.J.Misc. 232, 32 A.2d 855, the Circuit Court of New Jersey for Bergen County held that the power to make a lease for a fixed and limited term included the power to grant an option to renew and extend the term of the lease for a stated additional term. It does not appear that the power of the municipality to grant an option to purchase was considered or involved in the case.

In Phelps v. Harris, 101 U.S. 370, 25 L. Ed. 855, the court held that a trustee had power to make partition of lands held in trust and to convey to one of the beneficiaries of the trust property the lands which had been allotted to the beneficiary.

The court held that the power to make partition and convey title to the beneficiary was conferred on the trustee by a deed which provided that the trustee ". . . is to have power to sell and exchange said property after the death of" the grantor, and also by a will which gave the trustee power "to dispose" of any property devised in the will that might fall to testator's children and invest the proceeds in such manner as the trustee might think proper for their benefit. The question of the power of a trustee or agent to grant an option to purchase was not in anywise involved in *Phelps* and is not mentioned in the opinion.

In State v. Board of Land Commissioners, 50 Wyo. 181, 58 P.2d 423, the Supreme Court of Wyoming denied an application for rehearing in the same case reported in 50 Wyo. 205, 62 P.2d 516. On original deliverance, the court held that mandamus would not issue to require the defendant Board to deliver to plaintiff a patent conveying state land to plaintiff without a reservation of mineral rights to the state, when an examination of the papers clearly showed that the plaintiff had agreed to purchase the land subject to the mineral reservation to the state. On rehearing the court noted that the statute authorized the board not only to lease or sell, but also to "dispose of" the lands under the board's control, and observed that "to dispose of" includes more than "to sell." The court cited Phelps v. Harris, supra, where the court held that the power to dispose of included the power to partition and convey land to the beneficiaries of a trust. The court cited also American Home Missionary Society v. Wadhams, 10 Barb. (N.Y.) 597, decided in 1851, wherein the court held that when, prior to and in contemplation of marriage, a man and woman entered a premarital contract and agreed that the wife, during and notwithstanding her marriage should be permitted to enjoy, receive, and dispose of her separate property as if she were an unmarried woman, the wife had power to dispose of her property by will as

well as by deed, and a will executed by the wife was entitled to admission to probate after her death. The power to grant an option is not mentioned in either State v. Board of Land Commissioners, supra, or in *Phelps* or *Wadhams*.

In McLaren Gold Mines Co. v. Morton, 124 Mont. 382, 224 P.2d 975, the court held that a power of attorney authorized the attorney in fact to execute in the name of the grantor of the power, a lease of an "unpatented Lode Mining Claim" which lease granted an option to purchase to the lessee. The power of attorney recites in pertinent part as follows:

" 'Know all men by these presents, That I, Robert L. Morton, . . . do hereby appoint Dan G. Ross, of Park County, State of Montana, my attorney for me, and in my name, place and stead, to bargain, transact and agree for, purchase, receive and take rents, hereditaments and accept the seizin and possession of all lands and all deeds and other assurances and to lease, let, demise, bargain, sell, release, convey, mortgage and hypothecate lands, tenements and hereditaments upon such terms and conditions and under such covenants as he shall think fit and also for me and in my name, place and stead and as my act and deed to locate, lease, sell and do all other things necessary in connection with and in compliance with the laws of the United States Government and the State of Montana, in locating and perfecting title to mines and to preserve, manage, sell or dispose of, mortgage, lease, hypothecate or otherwise transfer any and all of said mines, as well as any other mines that I may now be the owner of or have an interest in in the State of Montana, including the right to commence any suit in court and prosecute the same through to judgment that my said attorney deems necessary in order to protect my interests, and also to locate mill sites, townsites, mining claims, and water rights and take all necessary legal steps and proceedings to accept the same and man-

age, work, sell, mortgage, lease or otherwise dispose of any and all of them to our best advantage, giving and granting unto my said attorney, Dan G. Ross, full power and authority to do and perform all and every act and thing whatsoever requisite, necessary, or proper to be done in and about the premises, as fully to all intents and purposes as I might or could do, if personally present, hereby ratifying and confirming all that my said attorney shall lawfully do or cause to be done by virtue hereof.

" '. . . . . . . . . .' "

(224 P.2d at 978, 979)

Among other things, the court said:

"In Lindley on Mines (3rd Ed.), section 859, pp. 2123–2127, it is said:

" 'There is no class of contracts connected with the mining industry more familiar to the profession than that of options to purchase, working bonds, or executory contracts of sale. Unlike other classes of real estate, the value of a mine cannot be determined by mere superficial observation. Expensive investigations, involving measurements, examination of underground geological conditions, and sampling invariably precede the consummation of a purchase or sale of mining property. In order to justify an intending purchaser in making the requisite investigations and incurring the attendant expense, he invariably exacts some contract from the owner by which he secures the first privilege of purchasing the property in the event the examination proves satisfactory. . . .

" '. . . . . . . . . .' "

(224 P.2d at 980)

In view of the language of the power of attorney and the custom that one contracting to work an unproved mining claim "invariably exacts some contract from the owner by which he secures the first privilege of purchasing the property . . .," it is reasonable to construe the power of attorney in *McLaren* as conferring on the

agent the power to execute a lease containing the grant to the lessee of an option to purchase the unproved claim. In the instant case, no mining claim is involved. In *McLaren,* the grant included ". . . full power and authority to do and perform all and every act and thing whatsoever requisite, necessary, or proper to be done in and about the premises, as fully to all intents and purposes as I might or could do, if personally present . . ." No such broad and all inclusive power is granted to municipalities by Act No. 843. The circumstances here are quite different from those existing in *McLaren.*

In Aerojet-General Corp. v. Askew, 453 F.2d 819, in part V of the opinion, the United States Court of Appeals for the Fifth Circuit held that the defendants, which were statutory agencies of the State of Florida, did have authority to grant an option to purchase land held by the defendants. The court noted that defendants cited rulings of the courts in Texas, Georgia, and Mississippi in support of their contention that they had no power to grant the option, but the court does not discuss the cited cases (which include *Potter County,* supra) and concluded that:

"We recognize the obligation of the defendants to safeguard an asset of the State of Florida—land—which is in increasingly short supply. The defendants nevertheless clearly have a duty to deal fairly with those with whom they have contracted. As a matter both of statutory construction and of good faith and fair dealing, we conclude that the defendants should not prevail on the issue of authority to grant an option to purchase the land covered by the lease." (453 F.2d at 834)

No authority is cited to support the conclusion.

In Appeal of Leech, 371 Pa. 84, 89 A.2d 351, the court held that a borough had authority to grant an option to sell land. The court said:

". . . The power of municipalities to sell properties which they have jointly acquired at tax sales is particularly broad. See Sec. 3 of the Act of July 28, 1941, P.L. 536, 72 P.S. § 6151.3. . . ." (89 A.2d at 355)

The statute cited is not set out or discussed in the opinion.

In Plant Food Co. v. City of Charlotte, 214 N.C. 518, 199 S.E. 712, the court held that the city had authority to enter into a contract for the removal of sludge from the city's sewage disposal plant although the term of the contract extended into the term of the successors of the city governing body. In Picket Pub. Co. v. Board of Commissioners, 36 Mont. 188, 92 P. 524, the court held that the board of commissioners of a county had authority to enter into a two-year contract for printing which extended into the term of the board's successors in office. In Corning v. Patton, 236 Ala. 354, 182 So. 39, the court held that the county governing body had authority to lease for a long term land of the county which was no longer used as the site for the county court house. The power to grant an option to purchase was not an issue in the three cases last cited.

In Johnson v. City of Sheffield, 236 Ala. 411, 183 So. 265, this court affirmed a decree holding valid a municipal bond issue. No grant of an option to purchase was involved.

King v. City of Mobile, 273 Ala. 109, 134 So.2d 746, is cited for the proposition that a city is authorized to enter into a binding agreement to dispose of unneeded real estate held by the city even without an "ordinance" as provided by Title 37, § 477(1). The case involves an agreement for the city to transfer to the state title to the Bankhead Tunnel, with an agreement for the state to lease the tunnel back to the city. It does not appear, however, that the power of the city to grant an option to purchase was an issue in the case. This court cited as authority the statute which appears as § 25(½), Title 23, of the Recompiled Code 1958, which authorizes the state to acquire the rights of way deemed necessary by the highway department for the

construction of a state road, either by purchase or condemnation.

The last case cited to support the power of the city to grant an option is O'Rorke v. City of Homewood, 286 Ala. 99, 237 So.2d 487, wherein this court held that under authority of Act No. 843, the city had authority to exchange certain lands owned by the city for other lands. The appellants contended that the city could not convey the city's land because it ". . . was in fact a park." The factual issue was whether or not the land was in fact a park. The issue was decided against appellants. The question of the power of the city to grant an option to purchase was not an issue.

The language of Section 1 of Act No. 843, supra, appears to have been taken from § 177, Title 12, Code 1940. The predecessor of § 177 first appears as § 765, Code of 1852, as follows:

"§ 765. The court of county commissioners have the control of all property belonging to the county, and may, by an order to be entered on their minutes, direct the disposal of any real property which can be lawfully disposed of, and appoint a commissioner to make titles thereto; and the conveyance of such commissioner, in accordance with such order, invests the grantee with the title of the county."

In the Code of 1867, § 899 is entitled: "§ 899. (765) *Court of county commissioners have custody of its property, and may sell.—*" The words *"their minutes"* were changed to the words, *"its minutes."* As thus changed, the identical language was carried into the following Codes, to wit: 1876, § 817; 1886, § 888; and 1896, § 1402.

In the Code of 1907, § 130 appears with title and language as follows:

"130. . . . Commissioners have custody of property, and may sell.—The court of county commissioners have control of all property belonging to the county, and may, by an order to be entered on its minutes, direct the disposal of any real property which can be lawfully disposed of, and direct the probate judge to make titles thereto; and a conveyance made by the probate judge in accordance with such order invests the grantee with the title of the county."

§ 209, Code of 1923, and § 177, Title 12, Code of 1940, contain the identical language which appears in § 130, Code 1907.

In Jackson v. Ball, 211 Ala. 273, 100 So. 327, this court held that, under § 130, Code 1907, a county governing body acting without fraud and in good faith, had authority to lease land of the county which was not needed for county purposes. This court said:

". . . Section 130 of the Code of 1907 gives the court of county commissioners control of the county property, and also authorizes them to dispose of same under the conditions there prescribed. *It may be conceded that the disposal of same means a complete and absolute disposition such as a sale,* and does not carry with it the right to mortgage or lease. We think, however, and so hold, that the general control is broad enough to cover the right to rent or lease the same, within the legal limitations, so long as the county is not in the actual need of same for county purposes. . . ." (Emphasis Supplied) (211 Ala. at 274, 100 So. at 327–328.)

The title of Act No. 843, supra, describes the act as an act ". . . to authorize the governing body of any city or town *to alienate* municipal property . . ." The body of the act recites that the city governing body may ". . . direct the mayor *to make title* . . .," and that a conveyance made by the mayor in accordance with the ordinance ". . . *invests the grantee with the title* . . ."

Granting to another an option to purchase land owned by the city is not an alienation of the land. Such an option is not

a disposition of the property. The option is "neither a sale nor an agreement to sell . . ." The owner parts with his right to sell, except to the optionee at his election, for a period. The option is not a contract of sale. Fulenwider v. Rowan, supra.

On consideration of Act No. 843 and the authorities cited and discussed hereinabove, the conclusion seems inescapable that the power granted to the city to direct disposal of the lands in suit and to direct the mayor to make title thereto does not include the power to grant to complainant the option to purchase which complainant seeks to compel the respondents to perform. It follows that the grant of the option was not within the power of the city governing body and the option is not enforceable.

Accordingly, the decree appealed from is reversed and the cause is remanded with directions to enter a decree in accord with this opinion.

Reversed and remanded with directions.

HEFLIN, C. J., and BLOODWORTH, McCALL, and FAULKNER, JJ., concur.