BEATTY, Justice.
This is an appeal by the Town of Union-town (Uniontown), defendant, from a judgment in favor of Landmark Development Company (Landmark), plaintiff, in Landmark’s action seeking specific performance of an option contract pertaining to certain real estate. We affirm.
King Pharr Canning Company, Inc. (King Pharr), originally owned the property which is in dispute in this case, .53 acres of land on which it operated a commercial vegetable canning operation, situated in Uniontown. King Pharr deeded the property to Uniontown for no consideration. Uniontown issued $60,000 worth of industrial development municipal bonds to finance improvements to the property, after which Uniontown entered into a 15-year lease agreement with King Pharr with an option agreement allowing the lessee to purchase the leased property upon the expiration of the lease in 1979. The amount of the monthly payments under the lease was made to equal Uniontown’s debt service on the bond issue, thus liquidating the bond issue at the expiration of the lease. Uniontown and King Pharr entered the agreements pursuant to Code of 1975, § 11-54-20, et seq., known as the Wallace Act. Pertinent sections follow:
“§ 11-54-21
“(a) It is the intent of the legislature by the passage of this article to authorize municipalities to acquire, own and lease and, in connection with any such acquisition, to enlarge, improve and expand projects for the purpose of promoting industry and trade and controlling, abating or preventing pollution (including preventing pollution which may be caused by the location, development or expansion of industry or commerce) by inducing manufacturing, industrial, commercial and research enterprises to locate in this state or to expand and enlarge existing enterprises or to utilize pollution control facilities in order to control, abate or prevent pollution from present or proposed operations or by any combination of two or more thereof pro *566 moting the use of agricultural products and natural resources of this state and promoting a sound and proper balance in this state between agriculture, commerce and industry. It is intended that each project be self-liquidating. It is not intended hereby to authorize any municipality itself to operate any manufacturing, industrial or commercial enterprise.
“(b) This article shall be liberally construed in conformity with the said intent.”
“§ 11-54-22
“In addition to any other powers which it may now have, each municipality shall have the following powers:
“(1) To acquire and, in connection with such acquisition, to enlarge, improve and expand, whether by construction, purchase, gift or lease, one or more projects which shall be located within this state and may be located within or without the municipality or partially within or partially without the municipality, but which shall not be located more than 15 miles outside of the corporate limits of the municipality;
“(2) To lease to others any or all of its projects for such rentals and upon such terms and conditions as the governing body may deem advisable and as shall not conflict with the provisions of this article; and
“(3) To issue revenue bonds for the purpose of defraying the cost of acquisition by construction and purchase and, in connection with any such acquisition, to enlarge, improve and expand or any thereof any project and to secure the payment of such bonds provided in this article.
“No municipality shall have the power to operate any project as a business or in any manner except as lessor thereof.”
“§ 11-54-32
“Neither this article nor anything contained in this article shall be construed as a restriction or limitation upon any powers which a municipality might otherwise have under any laws of this state, but shall be construed as requiring an election by the voters of a municipality prior to the issuance of bonds under this article by such municipality.”
On July 27, 1978, King Pharr, the lessee, assigned all of its rights in the property to Landmark. In April 1979, Landmark notified Uniontown of its intention to exercise its option to purchase the property and tendered all of the payments required under the lease and the option. Uniontown refused to honor the option agreement, declaring King Pharr in default of the lease agreement, because it had failed to pay the basic rent due, and challenging the validity of the option agreement.
As a result, Landmark sued Uniontown, seeking specific performance of the option agreement. Uniontown's defense below was, and on appeal is, that the agreements between King Pharr and Uniontown were governed by Code of 1975, § 11-47-20, et seq, rather than the Wallace Act, Code of 1975, § 11-54-20, et seq.
In addition to contesting the applicability of § 11-54-20, Uniontown counterclaimed for $15,000 expenses in connection with the alleged breach and default of the lease by King Pharr and claimed that Landmark, as assignee, was obligated to reimburse Un-iontown in that amount.
Section 11-47-20 follows:
“The governing body of any city or town in this state may, by ordinance to be entered on its minutes, direct the disposal of any real property not needed for public or municipal purposes and direct the mayor to make title thereto, and a conveyance made by the mayor in accordance with such ordinance invests the grantee with the title of the municipality.”
The Perry Circuit Court, in its final decree in favor of Landmark, reached the following conclusions:
(1) That the agreements between King Pharr and Uniontown were controlled by the Wallace Act, § 11-54-20, et seq., and not by § 11-47-20, et seq.;
(2) That, while § 11-54-20 is silent on the power to grant options to purchase, the *567 instant option was in conformity with the purpose of the statute; and
(3) That Landmark was entitled to receive a deed to the property after paying Uniontown the sum of $5,000.00 as required under the terms of the option agreement, together with $8,802.73 for certain site maintenance expenses, interest expenses, and attorney’s fees incurred by Un-iontown.
The trial court’s hearing was conducted ore terms without a jury. Therefore, unless its finding is “clearly and palpably wrong or without supporting evidence,” the trial court’s decision should not be reversed. Hartford Accident & Indemnity Co. v. Morgan County Association of Volunteer Firefighters, 454 So.2d 960 (Ala.1984). The principle is well established in Alabama that the findings of fact of a trial court sitting without a jury “will be presumed correct and will not be reversed on appeal in the absence of plain and palpable error.” Sasser v. Spartan Foods Systems, Inc., 452 So.2d 475 (Ala.1984); Ford v. Alabama By-Products Corp., 392 So.2d 217 (Ala.1980).
Uniontown argues that § 11-47-20, supra, should govern this case. That statute authorizes municipalities to dispose of land not needed for public or municipal purposes, pursuant to an ordinance declaring that the land is unneeded. As Uniontown observes, that authority does not extend to granting options to purchase. City of Tuskegee v. Sharpe, 292 Ala. 14, 288 So.2d 122 (1973); Johnson v. City of Sylacauga, 293 Ala. 429, 304 So.2d 586 (1974). City of Tuskegee and City of Sylacauga can be distinguished from the instant case in that the parties involved did not intend to comply with the Wallace Act. Instead, in accord with what is now § 11-47-20, the city councils attempted to pass ordinances which provided that certain lands owned by the cities were not needed for public purposes and directed that the mayors execute options to purchase agreements. This Court held that the particular statute did not authorize the cities to enter contracts granting options to purchase.
In the instant case, however, the trial court found as a fact that the parties had attempted to enter into the lease and the option agreements in compliance with the Wallace Act as codified in § 11-54-20, et seq. There is ample evidence in the record to support that finding. The disputed land was conveyed to Uniontown for no consideration, and the recitals, in the lease stipulated that the Wallace Act empowered Un-iontown to “acquire the said real property ... to issue and sell the bonds and to lease the said real property and building to the lessee.”
Does the Wallace Act, § 11-54-20, et seq., authorize a municipality to grant to a private corporation an option to purchase real property?
Landmark relies on Newberry v. City of Andalusia, 257 Ala. 49, 57 So.2d 629 (1952), for a finding of implied authority for a municipality to grant an option under the Act. In Newberry, this Court found that the Wallace Act authorized the City of Andalusia to grant an option to renew a lease in order to make its project a self-liquidating concern, noting at 257 Ala. 61, 57 So.2d 639, that actions which tend to promote self-liquidation and the payment of industrial development revenue bonds, “though not specifically stated in haec ver-ba in the Act, are authorized by necessary implication. It is not necessary that the Act spell out every detail which is to be included in a bond resolution.” Landmark urges this Court to apply the same reasoning by analogizing the option to renew with the option to purchase.
Uniontown urges a distinction between this case and Newberry. It maintains that this Court in Newberry upheld the validity of the option only after finding that the option was part of the consideration for the company’s execution of the lease, and argues that the agreement between Union-town and King Pharr expressly states that the option was not part of the consideration for the lease. There is evidence to the contrary in the record:
“Q. I’m going to show you what’s marked as Plaintiff’s Exhibit No. 1 and *568 ask you whether or not you were the mayor of Uniontown when that lease was negotiated?
“A. [Mayor Long] Yes.
“Q. And did you sign that on behalf of the City of Uniontown?
“A. Town of Uniontown by Thomas R. Long as mayor, that’s me.
“Q. I show you Plaintiff’s Exhibit No. 2 which is an option.
“A. Same answer. I signed it as mayor. And also the town clerk signed it.
“Q. Were those two documents signed as a part of the same transaction?
“A. That’s correct.
“Q. Were they signed at the time that a conveyance of the land was made to the city by King Pharr?
“A. There would have been no deal if both of them had not been agreed to.
“Q. So the option was a bargain for consideration of conveyance for the land to the city and for the execution of the deed?
“A. Correct; and for King Pharr to assume that liability.”
The Supreme Courts of both Tennessee and Kentucky have held that statutory grants of power to buy, sell, and lease property include the implied authority to grant options to purchase. In Darnell v. County of Montgomery, 202 Tenn. 560, 563, 308 S.W.2d 373, 374 (1957), the court held that a transaction by which the county would lease a plant to an industrial concern, with an irrevocable option to purchase the plant, was not “an invalid restriction on the right of the [cjounty to sell its own property.” The Supreme Court of Kentucky likewise found an implied authority to grant options to purchase, finding that such options were consideration for the contract to lease. Bennett v. City of Mayfield, 323 S.W.2d 573 (Ky.1959).
The authorities cited, together with the terms of the Act and its legislative purpose, accord with the view that an option to purchase may be granted by a municipality which acts under the Wallace Act, § 11-54-20, et seq.
In holding the option contract valid, the trial court ordered Landmark to pay Union-town $5,000.00, as provided by the option contract, and to reimburse certain expenses totalling $8,802.73 incurred by Uniontown in connection with the property. This ruling affirmatively discloses that certain expenses were considered and allowed by the trial court upon Uniontown’s counterclaim.
The trial court’s findings of fact are not palpably wrong. The record provides ample evidence that the option to purchase constituted consideration for the lease agreement, indicating a bargained-for exchange between the parties. Therefore, construing the Wallace Act liberally, as prescribed by the legislature, granting the option was within the power of Uniontown “to enlarge, improve and expand projects for the purpose of promoting industry and trade.” Code of 1975, § ll-54-21(a). Finally, the grant of expenses indicates a consideration of Uniontown’s counterclaim. The near equality of expenses awarded and damages claimed indicates judicious treatment of the issues presented below.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.